Max F. SHULL, petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C7-86-901.**

Court of Appeals of Minnesota.

Dec. 23, 1986.

Daniel J. Moulton, Rochester, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Kenneth H. Bayliss, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER, and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Appellant Max Shull's driving privileges were revoked for violation of the implied consent law. He petitioned for judicial review, and the trial court sustained the revocation. He appeals, contending that the trial court erred. We affirm.

## FACTS

On December 29, 1985, at approximately 12:45 a.m., Officer Michael Alexander, a Wabasha County deputy sheriff, observed a motor vehicle being driven by Shull on County Road 21. Although the road was snowpacked and icy, Alexander observed that Shull's vehicle was traveling slower than necessary in view of the road conditions and was also weaving back and forth over the center line of the roadway. Alexander followed Shull's vehicle across the county line into Olmsted County and subsequently stopped it.

Alexander observed that Shull's face was flushed, his speech slurred and his eyes bloodshot and watery; Shull also had an odor of alcohol on his breath. Alexander had Shull perform the finger-to-nose test and the heel-to-toe test, and formed the opinion that he was intoxicated. He placed Shull under arrest, read him the implied consent form, and took him to the Wabasha County Sheriff's office. Shull consented to an Intoxilyzer test, which was administered by a certified operator and disclosed an alcohol concentration of .13.

Shull asked to have an additional test performed by a person of his own choosing. Alexander first checked with St. Elizabeth Hospital in Wabasha, but was informed by the hospital that it would not perform a test for Shull. Alexander then transported Shull to Lake City Hospital in Lake City, approximately 15 miles from the sheriff's office, to allow Shull to have a blood sample taken. The nurse there was unable to obtain a blood sample from Shull's arm because she was unable to locate a vein or because the vein collapsed. Shull then asked that a Wabasha laboratory technician be contacted to attempt to obtain a blood sample, but Alexander informed Shull that he would not comply with the request. Shull did not obtain the additional test.

The Commissioner of Public Safety revoked Shull's driving privileges and Shull petitioned for judicial review. The trial court sustained the revocation and Shull appeals.

## ISSUES

1. Did the police officer's observations of Shull's unnecessarily slow driving and weaving over the center line provide a reasonable basis for the stop?

2. Did the officer have probable cause to believe Shull was driving while under the influence?

3. Did the officer, who was outside his jurisdiction when he made the arrest, make a valid arrest of appellant?

4. Did the police officer refuse to allow Shull to take a blood test?

## DISCUSSION

### I

■ Shull contends the police officer did not have a reasonable basis for the stop. A police officer may make an investigatory stop if, considering the totality of the circumstances, he has a particularized and objective basis for suspecting the person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Engwer v. Commissioner of Public Safety*, 383 N.W.2d 418, 419 (Minn.Ct.App. 1986). The trained officer may draw inferences and make deductions which might elude an untrained person. *Id.* In this case the trial court found the officer observed that, although the road was snowpacked and icy, Shull's vehicle was traveling slower than necessary and was also weaving back and forth over the center line.

Shull does not contest these findings. Instead, he offers an explanation which he contends made his driving reasonable: that the road was winding, snowpacked and slippery; it had no visible center line because of the snow on the road; and he was following tracks in the middle of the road. Shull argues that had he driven in any other manner, he would have gone into a ditch. He asserts that his driving was proper based on the road conditions. Shull also offered a witness who testified that he too drove approximately 30–35 miles per hour and drove on the visible car tracks on the same road. Shull contends there was no reasonable suspicion that he was violating the law or doing anything unusual. He argues that the stop was a product of mere whim, caprice, or idle curiosity.

■ The officer articulated specific facts—excessively slow speed and weaving over the center line—to support the stop. *State v. Engholm*, 290 N.W.2d 780, 784 (Minn.1980). The reasonable inference the officer drew from these facts was that

Shull may have been driving while under the influence. The fact that another inference might have been drawn, that Shull was driving properly for the conditions, does not negate the fact that Alexander, a trained officer, observed objective facts which made him suspect Shull of criminal driving.

■ Further, the officer's subjective decision not to stop the driver immediately upon observation of these facts, but instead to follow him for some distance, while unusual, is of no legal significance. The test is whether the officer observed sufficient objective facts to support the stop. *State v. DeSart*, 357 N.W.2d 416, 418 (Minn.Ct.App.1984); *see State v. Speak*, 339 N.W.2d 741, 745 (Minn.1983). The facts set forth by the trial court and reasonable inferences drawn therefrom were sufficient to support Alexander's stop.

### II

Shull next contends the officer did not have probable cause to believe he violated Minn.Stat. § 169.121 (Supp.1985). The police officer testified as to the various indicia of intoxication he observed and the results of the field sobriety tests. Shull offers explanations for the indicia, citing testimony that the officer did not observe that Shull had any difficulty getting out of his car, that the officer said the odor of alcohol was "moderate" and Shull had a "sure balance," and that the ground on which the field sobriety tests were given was icy, covered with gravel and had a six to eight percent grade. The officer testified that Shull's complexion was red, and Shull argues that bloodshot eyes are not unusual late in the evening, nor are watery eyes unusual when one is standing in the wind.

■ Numerous signs can establish that a person is under the influence of alcohol. *Martin v. Commissioner of Public Safety*, 353 N.W.2d 202, 204 (Minn.Ct. App.1984). Each case must be decided on its own facts and circumstances, without the use of a formula. *Id.* Alexander listed

several indicia of intoxication which were sufficient for him to believe Shull was driving while under the influence. The fact that Shull offered explanations for these indicia does not negate the trial court's findings, nor its conclusion that Alexander had probable cause. *State v. Olson*, 342 N.W.2d 638, 640 (Minn.Ct.App.1984). All that is required of the reviewing court is to ensure the officer had a substantial basis for concluding there was probable cause to believe appellant was driving under the influence at the time the implied consent law was invoked. *Id.* at 641.

## III

Shull contends the arrest was invalid because it was made outside the officer's jurisdiction. The trial court found that after Alexander, a Wabasha County deputy sheriff, made the observations supporting the stop, he followed Shull's vehicle across the county line into Olmsted County for a considerable distance and then stopped it. He observed indicia of intoxication, performed field sobriety tests, arrested Shull for driving while under the influence, and read him the implied consent form. He then brought Shull back to the Wabasha County Sheriff's Department, where Shull consented to an Intoxilyzer test. In a memo attached to the order denying Shull's motion for a new trial, the court found the officer was in fresh pursuit and held the arrest was lawful.

■ Alexander's observations warranted a stop within Wabasha County. The trial court found he was in fresh pursuit of Shull. While the pursuit may have been "cool" rather than "hot," Alexander had enough facts from his observations in Wabasha County to follow Shull and stop him. In *Windschitl v. Commissioner of Public Safety*, 355 N.W.2d 146; 148 (Minn. 1984), the supreme court stated that under Minn.Stat. § 629.40 (Supp.1985), when an officer has the right to arrest a driver for an offense, he also has the right to pursue and apprehend him anywhere in the state. The arrest, which was made outside the county in which the officer had jurisdiction, was lawful under Minn.Stat. § 629.40, subd. 2. Even if, as Shull argues, the officer was not in fresh pursuit, he made observations which permitted him, as a citizen, lawfully to arrest Shull. Minn.Stat. § 629.37(1) (Supp.1985); *Windschitl*, 355 N.W.2d at 148–49. Alexander then properly administered the implied consent procedure after making the arrest. *Schmidtbauer v. Commissioner of Public Safety*, 392 N.W.2d 668, 669 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Oct. 29, 1986).

Shull argues that Alexander should have contacted an Olmsted County officer, rather than bringing him back to Wabasha County. He cites *State v. Sellers*, 350 N.W.2d 460 (Minn.Ct.App.1984), in which a Wisconsin officer stopped the defendant in Minnesota after following him from Wisconsin and observing offenses in both states. The officer radioed the Chisago County Sheriff's office and informed a deputy that defendant had been driving while under the influence. The Wisconsin officer then went on to administer field sobriety tests. This court upheld the actions. While *Sellers* does not address the issue presented here, we note that, in any event, it involves an officer from a foreign state, rather than an officer from a different jurisdiction within the state.

■ Further, Minn.Stat. § 629.40, subd. 3, provides that a licensed officer in fresh pursuit of a person pursuant to Minn.Stat. § 629.40, subd. 2, who is out of his jurisdiction, is serving in the regular line of duty as fully as if the service were within his own jurisdiction. Even if the officer acted as a citizen in making the arrest, the supreme court has indicated that "a peace officer making a citizen's arrest retains his status as peace officer and may engage in some activity otherwise barred to a citizen * * *." *Bounds v. Commissioner of Public Safety*, 361 N.W.2d 145, 146 (Minn.Ct. App.1985). It was permissible for the officer to bring Shull back to Wabasha County.

## IV

Shull contends he was denied his due process rights when Alexander refused to

allow him to obtain a blood test by the Wabasha laboratory technician. He cites *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the supreme court ruled that the withholding of evidence by the state which would exculpate the appellant's guilt or reduce his sentence is a denial of due process. This is, however, a civil, not a criminal, proceeding.

Minn.Stat. § 169.123, subd. 3 (1984), provides that additional tests may be requested by a person pursuant to the implied consent law:

> The person tested has the right to have a person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer; provided, that the additional test sample on behalf of the person is obtained at the place where the person is in custody, after the test administered at the direction of a peace officer, and at no expense to the state. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission and evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer.

Alexander drove Shull 15 miles to obtain a blood test. The trial court determined that the blood test could not be obtained due to reasons beyond the officer's control. When the nurse attempted to obtain a blood sample, she was unable to locate a vein or the vein collapsed.

This court has held that the only obligation a police officer has in such a situation is to allow the driver to use the telephone. *Frost v. Commissioner of Public Safety*, 348 N.W.2d 803, 804 (Minn.Ct. App.1984). In *State v. Hatlestad*, 347 N.W.2d 843, 844 (Minn.Ct.App.1984), the officer refused to furnish a blood sample kit for use in a local hospital and declined to transport the defendant 13 miles to a hospital where a sample could be taken. *Id.* at 844. This court held that the provisions of Minn.Stat. § 169.123, subd. 3, "impose no duty on the officer to furnish supplies or transportation. A test is neither 'prevented' nor 'denied' when this assistance is refused." *Id.* at 845. Alexander commendably drove Shull 15 miles to the hospital to obtain a sample. The fact that he refused to bring Shull to a laboratory technician in Wabasha, in what might well have been a further fruitless attempt to obtain a blood sample, did not violate Shull's statutory or due process rights.

### DECISION

The trial court's order sustaining the revocation of appellant's driving privileges is affirmed.

Affirmed.