*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0919**

State of Minnesota,
Respondent,

vs.

Ann Marie Hoyer,
Appellant.

**Filed April 4, 2016
Affirmed
Johnson, Judge**

Olmsted County District Court
File No. 55-CR-15-479

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Terry L. Adkins, Rochester City Attorney, Kelly M. Wagner, Assistant City Attorney, Rochester, Minnesota (for respondent)

Patrick Dinneen, Silver Bay, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Ann Marie Hoyer was convicted of driving while impaired. She argues that the district court erred by denying her motion to suppress evidence arising from a stop of her vehicle after a state trooper saw her vehicle lose traction when making a turn and drive

onto a concrete median. We conclude that the trooper had a reasonable, articulable suspicion of criminal activity and, therefore, affirm.

**FACTS**

At approximately 12:55 a.m. on January 4, 2015, State Trooper Eric Bormann was driving west on Elton Hills Drive (also known as 19th Street) in Rochester, near the intersection with the east frontage road of U.S. Highway 52. The weather was cold, windy, and snowy, and there was snow on the road. As he approached the intersection, Trooper Bormann saw a vehicle travel east on Elton Hills Drive and turn north onto the frontage road. Trooper Bormann saw the vehicle lose control by fishtailing to the right before swerving to the left and driving onto a concrete median with its left front wheel. Trooper Bormann then saw the vehicle drive off the median, briefly stop in the lane of travel, and continue driving north.

Trooper Bormann activated his emergency lights and stopped the vehicle for careless driving and driving outside the lane of travel. Trooper Bormann approached the driver's side of the vehicle and spoke with the driver, Hoyer. Trooper Bormann observed indicia of intoxication, including slurred speech and glassy eyes. He administered a field sobriety test and a preliminary breath test and arrested Hoyer for driving while impaired (DWI). After reading Hoyer the implied-consent advisory, Trooper Bormann administered a breath test, which indicated an alcohol concentration of 0.18.

The state charged Hoyer with one count of third-degree DWI for operating a motor vehicle with an alcohol concentration of 0.08 or more, in violation of Minn. Stat. §§ 169A.20, subd. 1(5), .26, subd. 1(a) (2014), and another count of third-degree DWI, in

2

violation of Minn. Stat. §§ 169A.20, subd. 1(1), .26, subd. 1(a). In May 2015, Hoyer moved to suppress the evidence obtained by Trooper Bormann after stopping her vehicle on the ground that the trooper's investigatory stop was invalid. At the suppression hearing, the state and Hoyer stipulated to the admission of an 18-page packet of documents, which includes Trooper Bormann's written report. The report contains, among other things, the following narrative:

> My attention was drawn to a Chevy Tahoe that was making a left turn from eastbound 19th Street to the northbound east frontage road. As the Tahoe turned left in front of me it fishtailed (the rear wheels were spinning with the right portion of the vehicle sliding to the right) to the right. The Tahoe did not just fishtail for a second or two but was fishtailing for much of the left turn. The Tahoe's rear swung so far to the right that the Tahoe began driving out of its lane to the left and headed towards the cement median curb. The Tahoe drove onto the cement median curb with its left front wheel. The Tahoe then drove back down off of the curb then briefly stopped in its lane. My squad camera did not record the fishtail but it did record the Tahoe hitting the curb and stopping.

The state and Hoyer also stipulated to the admission of a video-recording of the stop that was captured by Trooper Bormann's squad-car dashboard video camera. After reviewing the evidence, the district court denied Hoyer's motion on the ground that, after Trooper Bormann observed Hoyer's vehicle fishtailing and driving onto the concrete median, he had a reasonable, articulable suspicion to justify the stop.

The parties agreed to a stipulated-evidence court trial. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court found Hoyer guilty of both of the charged offenses. The district court stayed imposition of sentence for two years, ordered Hoyer to serve 30 days on electronic home monitoring, and assessed a $750 fine. Hoyer appeals.

**DECISION**

Hoyer argues that the district court erred by denying her motion to suppress evidence. Specifically, she contends that Trooper Bormann did not have a reasonable, articulable suspicion of criminal activity before stopping her vehicle because her driving was consistent with the normal manner of driving in wintry conditions.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. The Fourth Amendment also protects the right of the people to be secure in their motor vehicles. *See State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). But a law-enforcement officer may, "'consistent with the Fourth Amendment, conduct a brief, investigatory stop'" of a motor vehicle if "'the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968))). A reasonable, articulable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. The reasonable-articulable-suspicion standard is not high, but the suspicion must be "something more than an unarticulated hunch," *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted), and more than an "inchoate and unparticularized suspicion," *Timberlake*, 744 N.W.2d at 393 (quotation omitted). An officer "must be able to point to something that

4

objectively supports the suspicion at issue." *Davis*, 732 N.W.2d at 182 (quotation omitted); *see also Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880. Even a minor traffic violation may provide the necessary reasonable, articulable suspicion for a traffic stop. *See State v. George*, 557 N.W.2d 575, 578 (Minn. 1997). When analyzing whether a stop is justified, a district court should consider "the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). If the underlying facts are undisputed, this court applies a *de novo* standard of review to a district court's conclusion that an investigatory stop is justified by a reasonable, articulable suspicion. *State v. Yang*, 774 N.W.2d 539, 551 (Minn. 2009).

In this case, Trooper Bormann stated in his report that he saw Hoyer's vehicle lose control, swerve, drive onto a concrete median, and briefly stop in the lane of travel. In the district court, Hoyer testified that she did not stop in the lane of travel but otherwise did not deny that she engaged in the conduct described in Trooper Bormann's written report. Hoyer did not introduce any other evidence to contradict Trooper Bormann's written report or to call it into question. Furthermore, this court has viewed the squad-car video-recording, which corroborates Trooper Bormann's written report, to the extent stated by the report. In light of the factual record, the district court properly credited Trooper Bormann's written report.

The only remaining question is whether the conduct described in Trooper Bormann's written report gives rise to a reasonable, articulable suspicion of criminal

activity.  The state contends that Hoyer's driving violated two traffic laws.  *See* Minn. Stat. § 169.13, subd. 2 (2014) ("Any person who operates or halts any vehicle upon any street carelessly or heedlessly in disregard for the rights of others, or in a manner that endangers or is likely to endanger any property or any person . . . is guilty of a misdemeanor."); Minn. Stat. § 169.18, subd. 7(a) (2014) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."); *see also id.*, subd. 9 ("No vehicle shall be driven over, across or within any . . . dividing space [or] barrier section . . . .").  We agree.  In light of these traffic laws, Hoyer's driving gave rise to a reasonable, articulable suspicion of criminal activity so as to justify Trooper Bormann's investigatory stop of her vehicle.  *See George*, 557 N.W.2d at 578.

Hoyer contends that, notwithstanding these statutes, the caselaw requires an officer to observe driving that is "either in addition to, or somehow separate from" noncompliant driving that is due to poor driving conditions.  Hoyer cites *Shull v. Commissioner of Pub. Safety*, 398 N.W.2d 11 (Minn. App. 1986), in which an officer saw a vehicle driving slower than necessary on a snow-packed, icy road while weaving back and forth over the center line.  *Id.* at 13.  On appeal, Shull argued that his driving was attributable to the road conditions.  *Id.* at 13-14.  But this court concluded that the officer justifiably formed a reasonable, articulable suspicion of criminal driving conduct.  *Id.* at 14.  Consequently, *Shull* does not support Hoyer's argument for reversal in this case.  A more similar case is *Warrick v. Commissioner of Pub. Safety*, 374 N.W.2d 585 (Minn. App. 1985), in which a police officer stopped a vehicle after observing that it "subtl[y]" weaved within its lane and

6

varied its speed while the weather was cold and windy with limited visibility, though the vehicle never crossed either the fog line or the center line. *Id.* at 586. This court concluded, "In view of the wind and the impaired visibility, the 'subtle' weaving of the driver and the speed changes, principally between 40 and 45 m.p.h., do not reasonably warrant the intrusion of a brief investigatory stop." *Id.* *Warrick* is distinguishable from this case, however, because the driver stayed within his lane of traffic, while Hoyer weaved outside her lane of traffic, swerved abruptly, and drove onto a concrete median.

In sum, Trooper Bormann had a reasonable, articulable suspicion that Hoyer engaged in criminal activity by violating traffic laws. Thus, the district court did not err by denying Hoyer's motion to suppress evidence.

**Affirmed.**