Patrick Gerald WINDSCHITL,
Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C6-83-423.

Supreme Court of Minnesota.

Sept. 14, 1984.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for appellant.

J. Brian O'Leary, Springfield, for respondent.

COYNE, Justice.

The Commissioner of Public Safety appeals from the split decision of a Fifth Judicial District three-judge appellate panel reversing the Commissioner's proposed revocation of Patrick Windschitl's driving privileges. For the reasons set out below we reverse the district court panel and sustain the revocation of Windschitl's driving privileges.

Shortly after midnight on April 18, 1981, two Springfield police officers were on routine patrol in the city cemetery located outside the corporate limits of Springfield, Minnesota. As the patrol car left the cemetery, Officer Gary Fiegel spotted an automobile near another entrance to the cemetery. Fiegel thought the automobile was leaving the cemetery. Windschitl testified, however, that he had merely turned his automobile around on a paved parking area adjacent to the cemetery. The police signaled the driver to stop. Windschitl fled through a stop sign. The ensuing chase continued for several miles at speeds up to 85 miles per hour. The pursuing officers radioed a neighboring police department for assistance, and Comfrey Police Chief James Meyer stopped Windschitl in a rural area.

When Officer Fiegel arrived on the scene, he asked Windschitl to get out of his car. Windschitl complied. Observing signs of intoxication, Officer Fiegel administered a preliminary breath test. The machine registered an alcohol concentration in excess of .10. Officer Fiegel arrested Windschitl on the charge of driving while intoxicated. A blood test performed at the Springfield hospital disclosed that Windschitl's alcohol concentration was .14.

The Commissioner of Public Safety proposed revocation of Windschitl's driving privileges. Windschitl requested a judicial hearing; the Brown County Court sustained the proposed revocation. On appeal the District Court for the Fifth Judicial District rescinded the proposed revocation. The majority of the panel determined that Officer Fiegel had not made a valid officer's arrest because he was outside the corporate limits of Springfield when the events leading to the arrest occurred and that he had not made a valid citizen's arrest because private citizens are not empowered to administer preliminary screening tests. We conclude that, whether it be considered an arrest by a peace officer or by a private citizen, it was a valid arrest.

Unauthorized entry or presence in a cemetery when the cemetery is closed to the public is a misdemeanor. Minn.Stat. § 609.605, subd. 11 (1982). A police officer has authority to arrest without a warrant for misdemeanors committed or attempted in his presence and within his jurisdiction. *Smith v. Hubbard*, 253 Minn. 215, 220, 91 N.W.2d 756, 761 (1958); Minn.Stat. § 629.-34, subd. 1(1) (1982). When Officer Fiegel first saw Windschitl's car, he inferred that Windschitl was leaving the cemetery and that a misdemeanor had been committed in

his presence. That a misdemeanor may not actually have been committed does not affect the legality of the arrest; it is sufficient that the officer reasonably believed that the person arrested was committing an unlawful act. E. Fischer, *Laws of Arrest* § 90 p. 193 (1967); *Smith v. Hubbard,* 253 Minn. 215, 223, 91 N.W.2d 756, 763 (1958).

Although the district court presumed that the city had authorized its police officers to protect the cemetery pursuant to Minn.Stat. § 412.221, subd. 3 (1982), and recognized that Officer Fiegel was rightfully in the cemetery, it ruled that Officer Fiegel had no legal right to exercise his authority as a police officer because he was at all times material to this inquiry outside the corporate limits of Springfield.

■ Although as a general rule a city cannot exercise its police powers beyond its boundaries, the legislature often permits municipal corporations to acquire land within or without their limits for public purposes and it may authorize the extraterritorial municipal police regulation of public grounds outside municipal boundaries. 6 McQuillan, *Municipal Corporations* (3d ed. 1980) § 24.57. *Town of Burnsville v. City of Bloomington,* 268 Minn. 84, 91, 128 N.W.2d 97, 103 (1964).

■ By statute Minnesota accords cities the power to acquire, manage, and, by ordinance, to regulate cemeteries. Minn.Stat. § 412.221, subd. 9 (1982).[1] Cities also have the express power to control and protect their property. Minn.Stat. § 412.221, subd. 3 (1982). Inasmuch as any employee of any cemetery association has, after taking a constable's oath, all the rights and powers of a police officer within and adjacent to the cemetery grounds, Minn.Stat. § 306.-13 (1982), there can be little doubt that the police power of the City of Springfield extended to the cemetery and that Officer Fiegel possessed the rights and powers of a police officer while patrolling the cemetery.

■ Since Officer Fiegel had the right and power as a peace officer to arrest Windschitl for a violation of section 609.-605, subd. 11, which Fiegel reasonably believed had been committed in his presence, Fiegel also had the right to pursue and apprehend Windschitl anywhere in the state. Minn.Stat. § 629.40 (1982). Moreover, when the conduct of the offender during the course of the pursuit and arrest furnishes separate and distinct grounds for arrest, the police officer may arrest the offender for the additional offense. E. Fischer, Laws of Arrest § 91 p. 196 (1967). Thus, when Officer Fiegel finally apprehended the fugitive, he could lawfully arrest Windschitl not only for entering the Springfield cemetery when it was closed but also for failing to stop at the stop sign, for speeding, and for fleeing from a police officer. We also conclude, as did the lower court, that the time and place of the events, the failure to stop at the stop sign, the high-speed chase, and the officer's perception of signs that Windschitl had been drinking afforded Officer Fiegel sufficient reason to believe that Windschitl had been driving while intoxicated. Accordingly, the statutory grounds for the administration of the preliminary screening test, Minn.Stat. § 169.121, subd. 6 (1982), as well as any jurisdictional requirement for his authority as a police officer were present. Minn. Stat. § 629.40 (1982).[2]

■ Moreover, even if Officer Fiegel had been outside his jurisdiction when he

---

1. The propriety of Springfield's ownership of a cemetery outside its corporate limits is not challenged. Compare Minn.Stat. § 412.221, subd. 9 (1982), with Minn.Stat. § 365.26 (1982), which authorizes towns to acquire for cemetery purposes only lands lying within its limits.

2. Minn.Stat. § 169.121, subd. 1a (1984), enacted subsequent to Windschitl's arrest, specifically authorizes a peace officer who has probable cause to believe that a person is driving while intoxicated to pursue, stop, arrest, and exercise the powers and perform the duties of peace officers under sections 169.121 and 169.123. In addition, subdivision 1a implicitly recognizes that officers acting under § 629.40 have always had the power to administer a preliminary screening test if, during the course of a pursuit and stop, the officer acquires cause to believe the fugitive was driving while intoxicated.

observed what he believed to be the commission of a public offense, the arrest was lawful. A private citizen may arrest another for the commission of a public offense committed or attempted in his presence, Minn.Stat. § 629.37 (1982), and he may pursue him. Minn.Stat. § 629.38 (1982). Nor is a police officer precluded from using flashing lights and siren when making a citizen's arrest. Those official accoutrements did not, as Windschitl contends, cause his flight but only served to identify the pursuer and signify the purpose of the pursuit. During the course of the high-speed chase, the lights and siren served the very practical purpose of alerting other travelers to the presence of the speeding vehicles. Once the fugitive was apprehended, Officer Fiegel's observation of the signs of intoxication, coupled with the preceding events, provided ample basis for the arrest without the preliminary breath test. *See Marben v. State, Department of Public Safety,* 294 N.W.2d 697, 700 (Minn. 1980). The preliminary screening test served only to confirm Officer Fiegel's observation.

Finally, Windschitl asserts that the Commissioner of Public Safety was required to prove the reliability of the machine used in the preliminary screening test and that Fiegel was qualified to administer the test. He does not challenge the result of either the preliminary screening test or the blood test. The proposed revocation is based on the blood test results; it is not based on the preliminary screening test, which may not be used as evidence of violation of Minn.Stat. § 169.121, subd. 1 (1982), but only as one type of proof of the propriety of requiring a test pursuant to section 169.123, subd. 2. Nothing in the record before us [3] suggests that the trial court abused his discretion in admitting the result of the preliminary screening test into evidence or that the evidence was insufficient to sustain the proposed revocation.

Reversed.

3. Since a transcript was not available, the parties proceeded on a statement of the proceedings prepared by the appellant. The statement has not been approved by the trial court.