THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CLIFFORD J. CARRAHER, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRYAN S. LLOYD, Defendant-Appellee.

Second District   Nos. 2—89—0748, 2—89—0772 cons.

Opinion filed July 16, 1990.

Michael P. Coghlan, State's Attorney, of Sycamore (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

William P. Brady and Barbara J. Slingerland, both of Gallagher, Klein & Brady, of De Kalb, for appellees.

JUSTICE DUNN delivered the opinion of the court:

The State appeals from judgments of the circuit court which quashed defendants' arrests for driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)) and rescinded the summary suspensions of defendants' driving privileges (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1). The State contends in these consolidated appeals that the circuit court erroneously concluded that the Sycamore police officers involved lacked the authority to arrest defendants since the arrests took place in unincorporated De Kalb County outside Sycamore's city limits.

In case No. 2—89—0748, defendant Clifford J. Carraher (Carraher) was arrested at 1:46 a.m. on March 10, 1989, by Officer Gary Martha of the Sycamore police department. Officer Martha charged defendant with speeding and drunk driving. Carraher declined to perform field sobriety tests and later refused to submit to a breath test. On the basis of defendant's refusal, Officer Martha prepared a law enforcement sworn report and served notice upon defendant of the summary suspension of his driving privileges, pursuant to section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). Defendant timely requested a summary suspension hearing. We recount only those facts adduced at the hearing which are pertinent to the instant appeal.

Officer Martha was on duty on State Street in Sycamore on March 10, 1989, when he timed Carraher's vehicle going 50 miles per hour in a 30 miles-per-hour zone. The officer activated his red lights, made a U-turn and followed Carraher's vehicle approximately 1½ miles to Evergreen Trailer Park. Carraher turned left into the trailer park, and Officer Martha testified that Carraher attempted to elude him briefly. The officer caught up with Carraher, and, when Carraher's car came to a stop, Martha approached and asked for Carraher's driver's license. Martha told Carraher that he had stopped him for speeding and requested Carraher to take a field sobriety test, which

Carraher declined to do. According to the officer, Carraher admitting to having had something to drink, Carraher's eyes were bloodshot, his speech was slurred and he staggered. Martha advised Carraher that he was under arrest for speeding, fleeing from an officer and DUI.

On redirect examination, Officer Martha admitted that Evergreen Trailer Park, where he arrested Carraher, is outside the city limits of Sycamore, Illinois.

Defendant also presented his own testimony as well as that of Georgia Ridulph. The State called Officer Tom Scott, a Sycamore police officer, who testified that he had assisted Officer Martha at the scene of the arrest and that he processed Carraher's arrest at the police station.

At the close of the evidence, the defendant's counsel presented argument on the issue of whether Officer Martha had a reasonable basis for his opinion that Carraher was DUI. The trial court concluded that there was no question that probable cause existed; however, the court raised *sua sponte* the question of whether Martha, a Sycamore police officer, had the authority to arrest Carraher for DUI outside the city limits of Sycamore. The State offered two case citations and opined that an officer observing a basis for arrest in his jurisdiction may follow the suspect into another jurisdiction and make an arrest. Carraher's counsel argued that, although the officer may have had probable cause to arrest Carraher for speeding while he was within the city limits, the officer did not have probable cause to make a DUI arrest at that time. The court took the matter under advisement and later issued a letter of opinion.

In its letter, the trial court stated:

> "In the instant case, the Defendant [Carraher] was observed speeding within the city limits of Sycamore. He was followed and stopped by the officer [Martha] outside the city limits. I am satisfied that the officer had authority to stop the Defendant for speeding. However, when the officer discovered indicia of DUI in the process of the stop, he should have summoned a county police officer to make the DUI arrest. Accordingly, I will quash the DUI arrest and all evidence flowing therefrom. The speeding stop will stand."

The State's timely appeal ensued.

In case No. 2—89—0772, defendant Bryan S. Lloyd (Lloyd) was arrested at 1:50 a.m., on June 4, 1989, by Officer Charles Mayeda of the Sycamore police department. Officer Mayeda charged Lloyd with driving in the wrong lane (Ill. Rev. Stat. 1987, ch. 95½, par. 11—701) and DUI. At the police station, defendant submitted to a breath test

in which he registered a result of 0.24. On the basis of this test result, Officer Mayeda prepared a law enforcement sworn report and served notice upon Lloyd of the summary suspension of his driving privileges pursuant to section 11–501.1 of the Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 11–501.1.) In his sworn report, Officer Mayeda stated that he believed Lloyd was DUI because, "subject drove vehicle in wrong lane, weaved back and forth. Strong oder [sic] of alcohol on breath, eyes bloodshot, face flushed, speech slurred, failed field sobriety test." Lloyd timely requested a summary suspension hearing.

The record does not include a transcript of the rescission hearing; however, the State has prepared a bystander's report. We recount the following pertinent facts which were adduced at the hearing.

Officer Mayeda was on duty in Sycamore, Illinois, on June 4, 1989. He was proceeding north on Main Street at approximately 1:50 a.m. when he observed a vehicle approximately 10 car lengths ahead of him, also heading northbound. As he followed this vehicle past Main Street's intersections with Page Street and North Avenue, he observed the vehicle weave twice within its own lane and then cross approximately two feet into the southbound lane. The vehicle traveled in this manner for a few seconds. Mayeda stated that Main Street at Page Street and North Avenue is a two-lane highway with one lane going in each direction. There were no other vehicles on the road, and the weaving vehicle was not speeding. Mayeda stated that he did not recall any road construction in the area where the vehicle weaved and he did not recall having to deviate his path in order to avoid any construction or warning devices.

Mayeda followed the vehicle out of the city limits and activated his overhead lights. Mayeda followed the vehicle to Mount Hunger Road just outside the city limits, where the vehicle pulled over, and Mayeda found Lloyd to be its driver. Mayeda testified that Mount Hunger Road is outside the city limits of Sycamore but is still within De Kalb County, Illinois, and that, between the city limits and the point where Lloyd's vehicle stopped, he observed nothing unusual about the vehicle's travel.

Lloyd testified that he was northbound on Main Street in Sycamore and had to cross into the southbound lane due to road construction warning devices. He did not offer any testimony refuting Officer Mayeda's statements contained in the law enforcement sworn report.

The trial court quashed Lloyd's DUI arrest and rescinded his statutory summary suspension, stating, "While probable cause is found to exist, the stop of the defendant's vehicle was improper as being outside the officer's jurisdiction." The State's timely appeal ensued.

The issue on appeal is whether the extraterritorial arrests of defendants Carraher and Lloyd were valid. More specifically, we consider whether a police officer is authorized to arrest a motorist for drunk driving outside the officer's jurisdiction, when the officer has previously observed the motorist committing a traffic offense within the jurisdiction. The State initially argues that the officers involved in the instant matter were justified in making the DUI arrests on the basis of their authority as private citizens pursuant to section 107—3 of the Code of Criminal Procedure of 1963 (Criminal Code) (Ill. Rev. Stat. 1987, ch. 38, par. 107—3). Alternatively, the State contends that the extraterritorial arrests were authorized by section 107—5(c) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 107—5(c)), because the arresting officers had observed defendants committing offenses within the officers' jurisdiction. We agree with the State's second contention, and we reverse the trial court's orders on this basis and remand the causes.

■ At the outset, we must address defendants' assertion that the State has waived any argument based on section 107—5(c) for its failure to raise this argument before the trial court. We do not agree. As we noted in our recitation of the facts pertaining to defendant Carraher, the prosecutor argued "that an officer observing the basis for arrest in his jurisdiction may follow a car into another jurisdiction and make an arrest." Admittedly, the prosecutor failed to offer pertinent case authority and further argument in support of this proposition; nevertheless, his statement of the law was correct. Thus, we hold that the State has not waived the issue of whether the police officers had authority to effect DUI arrests outside their jurisdiction pursuant to section 107—5(c) of the Criminal Code.

■ The appellate court has held that a police officer may enter another jurisdiction to make an arrest for a crime that has been committed in his own jurisdiction. (*People v. Aldridge* (1981), 101 Ill. App. 3d 181, 186.) In *Aldridge*, Evanston police officers arrested the defendant in Chicago after receiving a report from a woman who said she had been abducted in Evanston and then taken to Chicago and raped. The appellate court concluded that since the defendant had allegedly committed a crime within Evanston, the Evanston authorities were justified in arresting him in another jurisdiction for that crime. (101 Ill. App. 3d at 181.) The *Aldridge* court relied upon an earlier appellate decision, *People v. Durham* (1979), 71 Ill. App. 3d 725.

In *Durham*, a Union County sheriff's sergeant followed the defendant into Alexander County after having received a report of a shooting in Union County. The sergeant arrested the defendant in Al-

exander County. The defendant argued that the sergeant had exceeded his authority and requested that any evidence seized incident to his arrest be suppressed. The trial court denied his motion.

On appeal, the *Durham* court observed that at common law municipal and county law enforcement officers generally lacked authority to make warrantless arrests outside the political jurisdictions in which they held office. (71 Ill. App. 3d at 726.) The so-called "fresh pursuit" doctrine provided the single exception to this rule and allowed an officer to arrest offenders who had fled the jurisdiction in which they had committed a crime when the officer was following "in fresh pursuit." (71 Ill. App. 3d at 726; see also Ill. Rev. Stat. 1987, ch. 38, par. 107—4(b).) The court determined, however, that the common-law rule has been modified in Illinois by section 107—5(c) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 107—5(c)), which provides, "[a]n arrest may be made anywhere in the jurisdiction of this State." Thus, the *Durham* court concluded:

> "While there is no case law interpreting the scope of this provision, we believe it lays to rest the notion that a police officer is limited by the concept of territorial boundaries or jurisdiction when making an arrest. Therefore, it is proper for a police officer to make a warrantless arrest in an adjoining county when he has probable cause to believe that the accused committed an offense in the county in which the officer holds office. This is true even though the officer had merely entered the adjoining county because of some suspicious activity and was not then in fresh pursuit of the offender." *Durham*, 71 Ill. App. 3d at 727.

As noted above, the *Durham* holding provided authority for the appellate court's decision in *Aldridge* (101 Ill. App. 3d at 186). *Durham* has also been cited with approval more recently in *People v. Sims* (1987), 166 Ill. App. 3d 289, 315.

In the instant cases, city police officers observed motorists committing traffic violations within the city limits. These violations of the Illinois Vehicle Code rendered defendants subject to arrest. (See *People v. Gupton* (1985), 139 Ill. App. 3d 530, 533.) In each case, the officer followed the motorist out of town and stopped the motorist for the observed traffic offense. When Officer Martha was successful in stopping defendant Carraher for speeding, he observed many of the indicia of intoxication and arrested Carraher for DUI. Similarly, when Officer Mayeda stopped defendant Lloyd for erratic driving, he also observed indications that Lloyd was intoxicated and arrested Lloyd for DUI. Defendants do not dispute that the officers observed them commit traffic offenses within the city of Sycamore. Also, defendants

do not dispute that the officers had probable cause to stop them for these traffic offenses. Under *Aldridge* and *Durham,* the officers had the authority, as police officers, to arrest defendants anywhere within Illinois for these offenses.

Defendants do contend, however, that even if the initial stops were proper, the officers did not have the authority to detain and question them about the possible DUI offenses or, in defendant Lloyd's case, to administer field sobriety tests. Defendants' reliance upon *People v. Fenton* (1987), 154 Ill. App. 3d 152, *rev'd* (1988), 125 Ill. 2d 343, is misplaced. In *Fenton,* a police officer from an Illinois community located near the Iowa border observed defendant's car traveling in excess of the speed limit in Illinois and followed the car across the Iowa border. The two cars stopped just inside the border, and the officer told defendant to pick up his speeding citation at the Hamilton, Illinois, city hall. *Fenton,* 154 Ill. App. 3d at 153.

The court noted in *Fenton* that under Iowa law, the Illinois officer lacked authority to act as a police officer, and his actions would have to be considered those of a private person. (154 Ill. App. 3d at 154.) The court went on to hold that private citizens do not have the authority to make noncustodial inquiries, or *Terry* stops, stating that private citizens generally do not have expertise in detecting criminal activity and should not therefore have such authority. (154 Ill. App. 3d at 154.) Our supreme court reversed because the record did not reflect that a seizure had taken place within the meaning of the fourth amendment; therefore, the officer's identification of defendant as the driver should not have been suppressed. *People v. Fenton* (1988), 125 Ill. 2d 343, 347.

■■■ The concerns raised in *Fenton* about permitting private citizens to conduct noncustodial inquiries are not present here. In the case at bar, as we have previously indicated, the two officers had the authority as police officers to stop defendants and arrest them for offenses that had occurred within their jurisdiction. While acting within their lawful authority as police officers, they observed indications that defendants were under the influence of alcohol and had therefore likely committed the offense of driving under the influence of alcohol within their jurisdiction. A police officer may temporarily detain an individual for the purpose of a limited investigation if the officer is able to point to specific, articulable facts which, taken together with reasonable inferences drawn from the officer's experience, would reasonably warrant the extent of the intrusion. (*People v. Beil* (1982), 110 Ill. App. 3d 291, 293.) Since the officers were not acting as private citizens in this case, *Fenton* is inapposite. Because the two offi-

cers were empowered to act as police officers while stopping and arresting defendants and observed indicia of DUI while carrying out these duties, we believe they were authorized as police officers to detain defendants for investigation, including questioning and field sobriety tests, to determine whether defendants had been driving under the influence within their jurisdiction.

■ Defendants also argue that the officers could not have initiated statutory summary suspension proceedings if they were acting as private citizens in arresting defendants for DUI. Because both defendants were observed by the officers driving within the city limits of Sycamore and since both were stopped within a short distance of the city limits in an apparent intoxicated condition, the officers could have readily inferred they were driving under the influence of alcohol while in Sycamore. Thus, the DUI arrests were for offenses that took place within the jurisdiction of the officers and, under *Aldridge* and *Durham*, the officers had the authority in their official capacity to arrest defendants for DUI. Accordingly, since defendants' assertion that the officers could not initiate statutory summary suspension proceedings is premised upon the erroneous assumption that the officers had no authority in their official capacity to arrest defendants and did so as private citizens, we reject that assertion.

The records in both matters establish that the trial court found that the police officers had probable cause for the DUI arrests. Although Lloyd claims that the trial court found only that Officer Mayeda had probable cause to stop him for improper lane usage, the record reflects otherwise. The court's order simply states, "While probable cause is found to exist, the stop of the defendant's vehicle was improper as being outside the officer's jurisdiction." In view of Officer Mayeda's sworn report attesting to the officer's observation of the indicia of Lloyd's intoxication, and Lloyd's failure to dispute these allegations, we can only conclude that the court's order reflects its finding of probable cause for the DUI arrest. (See *People v. Morrison* (1987), 155 Ill. App. 3d 1088, 1091 (sworn report is equivalent to a pleading).) Carraher does not dispute the probable cause finding in his case but contends that Officer Martha obtained probable cause to arrest him for DUI improperly by following him outside the city limits, an argument we have rejected.

In view of the foregoing, we hold that the trial court improperly quashed defendants' arrests and, consequently, erroneously rescinded the suspensions of their driving privileges. Accordingly, we reverse the trial court's order in both cases and remand the causes with the direction that the trial court issue a notice in each matter to the

Secretary of State indicating that the summary suspension of each defendant's driving privileges is sustained.

Reversed and remanded with direction.

REINHARD and GEIGER, JJ., concur.