STATE OF NEBRASKA, APPELLEE, V. PATRICK J. GREEN, APPELLANT.

458 N.W.2d 472

Filed August 3, 1990.   No. 89-658.

James C. Stecker for appellant.

Robert M. Spire, Attorney General, and Susan M. Ugai for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The defendant, Patrick J. Green, was convicted by a jury of operating a motor vehicle during a period of suspension, in violation of Neb. Rev. Stat. § 60-430.01 (Reissue 1988), a Class III misdemeanor. He was sentenced to 45 days in jail, and his driving privileges were suspended for 12 months. Upon appeal to the district court, the judgment was affirmed.

The defendant has appealed to this court and claims that the

district court erred in affirming the judgment of the county court because § 60-430.01 is unconstitutional and that the trial court erred in failing to appoint an attorney to serve as standby counsel for the defendant, in limiting the scope of the defendant's voir dire, and in failing to properly instruct the jury. The defendant also claims that his driving privileges were twice taken for the same "revocation."

The record shows that during the early morning hours of July 5, 1988, Officer Fairchild and Sergeant Galitz of the Columbus Police Department saw the defendant driving an automobile within the city limits of Columbus, Platte County, Nebraska. Officer Fairchild, who was out of uniform and was in the police cruiser "[k]eeping Sergeant Galitz company," had previously arrested the defendant for driving under suspension. Sergeant Galitz was subsequently informed by dispatch that the defendant's driver's license was suspended or revoked. The defendant was arrested by the two officers outside the Columbus city limits. At trial, the State introduced records of the Department of Motor Vehicles showing that the defendant's driver's license had been suspended for the period of March 14 through September 14, 1988.

The defendant appeared pro se at his trial and in the district court. Counsel was appointed to represent the defendant in this appeal.

## CONSTITUTIONALITY OF § 60-430.01

During a pretrial conference held August 11, 1988, the defendant moved that the court decide the constitutionality of § 60-430.01, contending that license revocation was cruel and unusual punishment and that he had a right to travel upon the highways. After taking the matter under advisement, the county court denied the defendant's "motion for declaratory judgment on the constitution."

It is not clear from the record whether this issue was raised in the defendant's appeal to district court. Assuming, arguendo, that the issue was properly raised, the defendant's contention that § 60-430.01 is unconstitutional is without merit.

Section 60-430.01 provides, in part:

It shall be unlawful for any person to operate a motor

vehicle during any period that his or her motor vehicle operator's license has been suspended, revoked, or impounded pursuant to conviction or convictions for violation of any law or laws of this state or by an order of any court or by an administrative order of the Director of Motor Vehicles or after such suspension, revocation, or impoundment but before reinstatement of his or her license or issuance of a new license.

The statute now provides a penalty of 1 year's suspension for a first offense and 2 years' suspension for each subsequent offense.

In his brief, the defendant claims the penalty constitutes cruel and unusual punishment, in violation of U.S. Const. amend. VIII. In connection with this claim, the defendant argues that a license suspension under § 60-430.01 deprives him of the opportunity to obtain meaningful work and employment.

A similar issue was raised in *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985), where Michalski argued that the penalty of permanent license revocation for third-offense drunk driving constituted cruel and unusual punishment under the U.S. and Nebraska Constitutions. This court held that Neb. Rev. Stat. § 39-669.07(3) (Reissue 1984) was constitutionally valid and that the penalty of permanent license revocation did not constitute cruel and unusual punishment under either the state or federal Constitution.

In light of our holding in *Michalski, supra*, the penalty of 1 or 2 years' suspension found in § 60-430.01 does not constitute cruel and unusual punishment.

The defendant further contends that, pursuant to the statute, he has been deprived of "life, liberty, and the pursuit of happiness," contrary to Neb. Const. art. I, § 1. Brief for appellant at 35. In connection with this argument, the defendant claims the suspension of his driver's license infringes on his happiness by limiting his ability to obtain jobs with better pay. He also claims that the statute unconstitutionally restricts his ability to travel. These arguments are frivolous. The defendant has not been deprived of employment, only of his privilege to drive an automobile, and is not prevented from

pursuing other modes of transportation or being transported by others in an automobile.

The defendant's constitutional arguments are without merit.

## RIGHT TO COUNSEL

The defendant next contends that the trial court erred in failing to appoint an attorney to serve as standby counsel. Notwithstanding his earlier emphatic statements to the contrary, he argues that "it is obvious that the defendant did not want to proceed through trial without any legal assistance." Brief for appellant at 15.

In *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the U.S. Supreme Court held that an accused has a sixth amendment right to conduct his own defense, provided that he knowingly and intelligently forgoes his right to counsel and he is able and willing to abide by rules of procedure and courtroom protocol. See, also, *State v. Jost*, 219 Neb. 162, 361 N.W.2d 526 (1985) (although an accused is entitled to be represented by counsel in all critical stages of a criminal proceeding against him, including sentencing, the right to counsel may be waived if such waiver is made intelligently and understandingly, with the knowledge of an accused's right to counsel).

A trial court may appoint standby counsel to aid an accused if the accused desires assistance, and to be available to represent the accused if termination of self-representation becomes necessary. *Faretta supra* at 422 U.S. at 834-35 n.46. However, *Faretta* does not require a trial judge to permit "hybrid" representation. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984). "A defendant does not have a constitutional right to choreograph special appearances by counsel." 465 U.S. at 183. In holding that a defendant's sixth amendment rights are not violated when a trial judge appoints standby counsel, even over the defendant's objection, the *McKaskle* Court noted that "[a] defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure. Nor does the Constitution require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of

course." 465 U.S. at 183-84.

The record shows that during his arraignment, the defendant was advised of his constitutional rights, including his right to a court-appointed attorney for jailable offenses. After an extensive discussion with the court, the defendant indicated he understood the possible penalty for the offense to be a maximum of 3 months' imprisonment, a $500 fine, or both. When the court asked the defendant if he desired an attorney, the defendant replied, "I certainly don't," and indicated that he wanted to proceed without an attorney.

At the August 11 pretrial conference, the trial court ascertained that the defendant did not have an attorney and asked whether he was able to afford an attorney. The defendant replied, "I don't see what difference that makes." The court then asked if the defendant waived his right to have an attorney. The defendant answered, "I certainly did." The defendant then moved "sua supondo" to have the trial judge keep him informed of each and every right as it came up during the proceedings. In overruling the defendant's motion, the trial court informed the defendant that "my requirement to both you and the State is that you've been informed of your rights. The Court no longer has any obligation beyond that. If you represent yourself, you're expected to take the status of an attorney." The defendant made no request for an attorney to assist him in the trial of this case.

The record shows that the defendant's waiver of his right to counsel was voluntarily, understandingly, and intelligently made, see *State v. Jost, supra,* and the trial court was neither asked nor required to appoint standby counsel. The defendant also was informed that if he proceeded pro se, he would be expected to take the status of an attorney. The defendant's assignment is without merit.

## VOIR DIRE

The defendant next complains that the trial court improperly limited his questioning of the jury panel and set an unreasonable time limit for him to complete his voir dire. He also contends that he was unfairly limited in the types of questions he was allowed to ask the prospective jurors.

The selection of jurors is governed by Neb. Rev. Stat. § 29-2004 (Reissue 1989); peremptory challenges and challenges for cause are governed by Neb. Rev. Stat. §§ 29-2005 and 29-2006 (Reissue 1989).

The record shows that jury selection began on October 19, 1988. The court began the proceedings by asking the jurors some basic questions. The prosecution briefly questioned the panel and passed the jury for cause. The defendant proceeded to examine six prospective jurors.

During the defendant's voir dire, the court refused to allow answers to be made to a number of improper questions. Several of the questions were argumentative, extremely broad, and irrelevant to the case at hand. Other questions constituted personal attacks on the prospective jurors.

The defendant was advised by the court that he would be limited on the amount of time that he could ask questions. After examining two prospective jurors at length, the defendant moved to strike one juror for cause. This motion was denied. The defendant was then warned that he would have another 20 minutes to finish voir dire. He asked questions of four other jurors and announced, "I'm happy with that six," including the juror he previously challenged for cause. He stated to the court that he did not have any questions of the other members of the panel and declined to exercise any of his peremptory challenges.

In *State v. McCoy*, 228 Neb. 178, 183, 421 N.W.2d 780, 783 (1988), we held that "a party who fails to challenge prospective jurors for disqualification and does not use his peremptory challenges to remove such jurors from the panel waives any objection to their selection."

There was no error in the selection of the jury, and the defendant's assertions to the contrary are without merit.

## JURY INSTRUCTIONS

The defendant next contends that the trial court erred in failing to instruct the jury as follows: "Any one or all six may vote to nullify the Law in this case." "The Law which I have explained to you in this case was written, passed and administered by public servants and now you the governed have the full right and duty to nullify this Law if you do not wish to

be governed by it."

In *State v. Chaney*, 184 Neb. 734, 740, 171 N.W.2d 787, 791 (1969), this court said: "[I]t is the duty of the trial judge to instruct on the law of the case and the law so given to the jury in the instructions must apply even though the jury may decide that the law should be otherwise." This rule is reflected in NJI2d 1.01, which provides:

> Members of the jury, now that you have heard all of the evidence[ and the arguments of counsel], it is my duty to instruct you in the law.
>
> . . . .
>
> (2) It is my duty to tell you what the law is. It is your duty to decide what the facts are and to apply the law to those facts.
>
> . . . .
>
> (3) You must apply the law in these instructions, even if you believe that the law is or should be different.

Pursuant to § 29-2006, a juror may be challenged for cause if he has formed or expressed an opinion as to the guilt or innocence of the accused. If a juror states that he has formed such an opinion, the court must examine the juror as to the ground of his opinion. The court may, in its discretion, admit the juror as competent to serve if the juror's opinion is not founded upon certain impermissible factors "and the juror . . . shall say on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence."

The defendant's proposed instructions were not correct statements of the law. Although a jury may acquit an accused even if its verdict is contrary to the law and the evidence, the defendant is not entitled to have the jury instructed about the power of jury nullification. See, e.g., *Reale v. U.S.*, 573 A.2d 13 (D.C. App. 1990).

The defendant also complains that the trial court erred in giving instructions Nos. 9 and 10, contending that these instructions unfairly emphasized portions of the State's evidence. He properly objected to these instructions at trial.

Instruction No. 9 provided: "The Director of Motor Vehicles shall adopt a seal. Copies of all records or other instruments in

the department when certified by the director as true copies and bearing the seal thereof, shall be received in any court as prima facie evidence of the original records or instruments."

Instruction No. 9 is taken directly from Neb. Rev. Stat. § 60-418.01 (Reissue 1988) and correctly advised the jury regarding the admissibility and effect of documentary evidence presented by the State which bore the seal of the Department of Motor Vehicles. In any event, the jury was separately instructed that "[y]ou are the sole judges of the credibility of the evidence and every part thereof and of the weight to be given to the same." The defendant has failed to show any prejudice resulting from instruction No. 9.

Instruction No. 10 provided: "A city police officer has the authority to stop and arrest a person outside the city limits if a misdemeanor offense was committed in his presence within the city limits."

The defendant concedes that instruction No. 10 is a correct statement of the law, but claims that this instruction was irrelevant. The record shows that the defendant, during his examination of Officer Fairchild, raised the issue of whether or not the officer stopped him within the Columbus city limits and called into question the officer's authority to arrest him.

If the jury instructions, when read together, correctly state the law, are not misleading, and adequately state the issues, there is no prejudicial error. *State v. Beins*, 235 Neb. 648, 456 N.W.2d 759 (1990); *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989); *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). We determine that the instructions given to the jury correctly stated the law, were not misleading, and adequately covered the issues involved. The defendant's assignments are without merit.

## LICENSE REVOCATION

In his final assignment of error, the defendant claims that his driving privileges were twice taken for the same offense. This assignment refers to the defendant's attempt to collaterally attack the December 12, 1986, order of the director of the Department of Motor Vehicles, which became effective March 14, 1988. In connection with this assignment, the defendant

claims that the Department of Motor Vehicles improperly delayed the commencement of the suspension period on the underlying offense until the defendant's appeal to the Supreme Court was dismissed. See *Green v. Jensen*, 227 Neb. xxvi (case No. 87-1034, March 14, 1988).

The Supreme Court will sustain a criminal conviction if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Thayer*, 235 Neb. 70, 453 N.W.2d 474 (1990); *State v. Carter*, 234 Neb. 378, 451 N.W.2d 271 (1990).

The record shows that the defendant's driver's license was suspended for the period of March 14 through September 14, 1988, and that the defendant received this notice by certified mail on May 19, 1988. The defendant produced no competent evidence to the contrary, and the evidence was sufficient to support the defendant's conviction.

The judgment of the district court, affirming the judgment of the county court, is affirmed.

AFFIRMED.