STATE OF NEBRASKA, APPELLEE, V. SHIRLEY L. TINGLE,
APPELLANT.
477 N.W.2d 544

Filed November 22, 1991.    No. 90-538.

Mark A. Johnson for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Claiming that evidence obtained after she was arrested should have been suppressed, Shirley L. Tingle appeals her conviction for second-offense driving while under the influence of alcohol (DWI). She originally was convicted in the Antelope County Court. Tingle appealed to the district court for Antelope County, which affirmed the defendant's conviction.

We agree with Tingle that in the absence of statutory authority it is not permissible for a police officer in a city of the second class to pursue and arrest a misdemeanant suspect beyond the limits of the officer's geographical jurisdiction.

Since Tingle was arrested outside the arresting officer's geographical jurisdiction, evidence obtained as a result of the defendant's arrest should have been suppressed. We therefore reverse the conviction and remand the cause to the district court, with instructions to remand it to the trial court for a new trial.

The record reflects that on August 31, 1989, at approximately 2 p.m., Officer Arvin Brandt of the Neligh Police Department received a radio dispatch requesting his presence at the Antelope County sheriff's office. Upon reaching that office, Brandt met Thomas Lanz, an insurance adjuster for Farm Bureau Insurance Company, who reported

that Tingle had been in his place of business and appeared intoxicated. Lanz observed that Tingle did not park her car straight in front of his office, that she was unsure of her footing as she walked into his office, that she had trouble opening the door, and that, once inside, Tingle's speech was slurred while she conversed with Lanz. Lanz described Tingle's automobile to Brandt, although the officer already knew the vehicle Tingle drove.

Brandt located the vehicle, parked in downtown Neligh, a city of the second class. The officer parked his cruiser and waited for Tingle to return to her vehicle. When Tingle returned to her vehicle, Brandt observed her as she drove first back to the insurance office momentarily and then west away from Neligh. Brandt followed immediately behind the defendant's vehicle. While within the city limits, Brandt observed Tingle's vehicle weave twice across the white line on the shoulder of the road about half the width of her vehicle and then twice across the centerline, once at least one-fourth the width of her vehicle. Brandt activated his overhead lights in an attempt to stop the defendant. Tingle passed another vehicle, at which time Brandt turned on his siren. Tingle failed to stop until she was 3 miles outside the Neligh city limits. Her speed hit 72 m.p.h. in a 55-m.p.h. zone. It was approximately 2:30 p.m. when Tingle was stopped on the highway.

Upon approaching the defendant's vehicle, Brandt noticed a slight odor of alcohol about Tingle. When asked to produce her driver's license, Tingle fumbled through her billfold and produced a credit card. Then, in the presence of a sheriff's deputy and a matron who had arrived at the scene at Brandt's request, Brandt asked Tingle to step out of the car and perform two field sobriety tests. After she failed these tests, Brandt placed Tingle under arrest for DWI and transported her to the sheriff's office. After signing an implied consent form, Tingle was given a breath test at 3:06 p.m. That showed a result of .188 grams of alcohol per 210 liters of Tingle's breath. Neb. Rev. Stat. § 39-669.07(3) (Reissue 1988) provides in substance that it shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle "[w]hen such person has a concentration of ten-hundredths of one gram or more by

weight of alcohol per two hundred ten liters of his or her breath."

Tingle was charged with DWI, second offense, a Class W misdemeanor under § 39-669.07. Her motion to suppress evidence obtained as a result of her arrest was overruled. Subsequently, a jury found Tingle guilty of driving while under the influence of alcohol, and thereafter, the court found the conviction to be Tingle's second offense. The defendant was sentenced to 30 days in jail and fined $500, and her driver's license was suspended for 1 year. The district court for Antelope County affirmed Tingle's conviction and sentence, and the defendant timely appealed to this court.

In her first assignment of error, Tingle claims that

the lower court erred by failing to suppress any and all evidence obtained from the defendant, including statements by defendant, breath test results and officers' observations after defendant's arrest, as such arrest was made by an officer of the city of Neligh, Nebraska, outside the officer's jurisdiction to arrest, and as such such evidence was seized as the result of an exploitation of an illegal arrest.

In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings of fact are clearly erroneous. *State v. Gibbs*, 238 Neb. 268, 470 N.W.2d 558 (1991). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, the Supreme Court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed witnesses testifying in regard to such motion. *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527 (1990).

"[T]he power of a police officer at common law to make an arrest without a warrant is limited to the boundaries of the governmental unit by which he was appointed, unless the police officer is acting in fresh and continued pursuit of a suspected felon who has committed an offense in the officer's presence and within his territorial jurisdiction."

*Com. v. O'Hara*, 30 Mass. App. 608, 609, 571 N.E.2d 51, 52 (1991), quoting *Commonwealth v. Grise*, 398 Mass. 247, 496 N.E.2d 162 (1986). It is clear that the common-law exception of "fresh pursuit" does not apply to Tingle's case. As stated, DWI under § 39-669.07 is a misdemeanor, whereas common-law fresh pursuit is limited to felonies.

There being no authority under common law to arrest a misdemeanant suspect outside an officer's geographical jurisdiction, the State must rely upon statutory authorization to prove that Tingle's arrest was lawful. See *Perry v. State*, 303 Ark. 100, 102, 794 S.W.2d 141, 142 (1990) ("[a] local peace officer acting without a warrant outside the territorial limits of the jurisdiction under which he holds office is without official power to apprehend an offender, unless he is authorized to do so by state statute"). Other states have allowed extraterritorial misdemeanor arrests under statutes that include (1) allowing the fresh pursuit of a misdemeanant outside a jurisdiction by express statutory language, see, *Inc. County of Los Alamos v. Johnson*, 108 N.M. 633, 776 P.2d 1252 (1989); *State v. Englehardt*, 465 So. 2d 1366 (Fla. App. 1985); *State v. Cochran*, 372 A.2d 193 (Del. 1977); *State, Department of Public Safety, v. Douglas Kaye Nystrom*, 299 Minn. 224, 217 N.W.2d 201 (1974); and *City of Scottsdale v. Kokaska*, 17 Ariz. App. 120, 495 P.2d 1327 (1972), or by language sufficiently broad to encompass misdemeanors, see, *People v. Carraher*, 199 Ill. App. 3d 965, 557 N.E.2d 975 (1990); *Commonwealth v. LeBlanc*, 407 Mass. 70, 551 N.E.2d 906 (1990); *Com. v. Fetsick*, 392 Pa. Super. 264, 572 A.2d 793 (1990); *City of Junction City v. Riley*, 240 Kan. 614, 731 P.2d 310 (1987), *appeal dismissed* 482 U.S. 911, 107 S. Ct. 3179, 96 L. Ed. 2d 669, *cert. denied* 482 U.S. 917, 107 S. Ct. 3191, 96 L. Ed. 2d 679; and *State v. McCarthy*, 123 N.J. Super. 513, 303 A.2d 626 (1973); and (2) allowing police officers to arrest as private citizens when outside their jurisdiction, see, *State v. Littlewind*, 417 N.W.2d 361 (N.D. 1987); *Windschitl v. Commissioner of Public Safety*, 355 N.W.2d 146 (Minn. 1984); and *People v. Bashans*, 80 Mich. App. 702, 265 N.W.2d 170 (1978).

In Nebraska, all of the above possibilities are inapplicable. Nebraska's Uniform Act on Fresh Pursuit applies only to police

officers from another state entering this state. See, Neb. Rev. Stat. §§ 29-416 to 29-421 (Reissue 1989). For intrastate fresh pursuit, resort must be had to the common law, which, as previously stated, only includes felonies. There is no Nebraska statute authorizing a police officer of a city of the second class to arrest a suspect for a misdemeanor DWI outside the officer's geographical jurisdiction. Nebraska's private-citizen statute allows warrantless arrests by a person not an officer only for felonies or petit larceny. Neb. Rev. Stat. § 29-402 (Reissue 1989).

In essence, the State argues that Neb. Rev. Stat. § 17-118 (Cum. Supp. 1990) extends the jurisdiction of police officers for cities of the second class to that of the sheriff in the county in which they operate. Section 17-118 provides:

> The police officers of the city shall have *power* to arrest all offenders against the laws of the state or of the city, by day or by night, in *the same manner* as the sheriff and to keep such offenders in the city prison or other place to prevent their escape until trial can be had before the proper officer.

(Emphasis supplied.) Similar statutes are found for all other classes of Nebraska cities. See, Neb. Rev. Stat. §§ 14-605 (Reissue 1987) (metropolitan class), 15-326 (Cum. Supp. 1990) (primary class), and 16-323 (Cum. Supp. 1990) (first class).

Interpreting a statute is a question of law. *State v. Ewing*, 221 Neb. 462, 378 N.W.2d 158 (1985). On questions of law, the Supreme Court has an obligation to reach a conclusion independent of that reached by the trial court. *State v. Jacobsen*, 238 Neb. 511, 471 N.W.2d 427 (1991); *Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991). The obligation of the court in consideration and application of a statute is to determine and give effect to the purpose and intention of the Legislature as ascertained from the entire language thereof considered in its plain, ordinary, and popular sense. *Adkisson v. City of Columbus*, 214 Neb. 129, 333 N.W.2d 661 (1983). Statutes which effect a change in the common law or take away a common-law right should be strictly construed. *Mason v. Schumacher*, 231 Neb. 929, 439 N.W.2d 61 (1989).

The flaw in the State's reasoning is the distinction between power, duty, and jurisdiction. Loosely translated in their plain, ordinary, and popular sense, these elements correspond to "what the police may do," "what they must do," and "where they may do it." This distinction is clearly laid out in Neb. Rev. Stat. § 81-2006 (Reissue 1987), which refers to the State Patrol and states: "Performance of all duties, powers, and exercise of jurisdiction . . . shall extend to all freeways . . . ." It is only the cities of the metropolitan class that are covered by a statute which specifically extends the jurisdiction of police officers beyond that of the common law. Neb. Rev. Stat. § 14-603 (Reissue 1987) provides that the chief of police's "jurisdiction and that of his or her officers in the service of process in all criminal cases and in cases for the violation of city ordinances shall be coextensive with the county." It is clear that § 17-118 and similar statutes do not provide countywide jurisdiction for police officers. These statutes merely refer to the "power" to make certain arrests. See *State v. LeBlanc*, 149 Vt. 141, 540 A.2d 1037 (1987), where the court refused to interpret a general statute to provide police officers statewide jurisdiction similar to that of sheriffs, absent explicit statutory language. Absent statutory or common-law authority, city police officers may not make warrantless misdemeanor arrests outside their jurisdiction. See, e.g., Neb. Rev. Stat. § 23-1704 (Reissue 1987) (sheriffs do have power to summon assistance).

In support of its proposition that § 17-118 does confer countywide jurisdiction, the State cites *State v. Carpenter*, 181 Neb. 639, 150 N.W.2d 129 (1967), *cert. denied* 392 U.S. 944, 88 S. Ct. 2288, 20 L. Ed. 2d 1406 (1968), which raised the issue of whether police officers had the right to stop a defendant's vehicle outside the city limits. In *Carpenter, supra*, police officers in Blair, Nebraska, had instructions to note any suspicious vehicles in the area because of a rash of local burglaries. Sometime between 3 and 3:30 a.m. two officers noticed a vehicle licensed in another county slowly cruising the streets of Blair. It appeared that the driver attempted to evade the officers when they approached the vehicle. The officers finally stopped the vehicle outside the city limits. When one of the occupants exited the vehicle, his feet struck something that

gave off a metallic sound. The officers looked through the open door and saw pry bars. The defendant complied with a request of the officers that he drive his car to the police station in Blair. It was at the police station that the defendant was arrested and subsequently charged with two separate felonies. Despite the State's contentions, *Carpenter, supra*, is clearly distinguishable from the case at bar. That action did not involve an arrest outside the officers' jurisdiction. This court held that although the defendant was stopped outside the city limits, he was not arrested until he arrived at the Blair police station. Secondly, the arrest was for two felonies, possession of burglary tools and breaking and entering, not for misdemeanors. Finally, specific statutory reliance for the stop was made on Neb. Rev. Stat. § 29-829 (Reissue 1989), which provides in part:

> A peace officer may stop any person in a public place whom he reasonably suspects of committing, who has committed, or who is about to commit a crime and may demand of him his name, address and an explanation of his actions. When a peace officer has stopped a person for questioning pursuant to this section and reasonably suspects he is in danger of life or limb, he may search such person for a dangerous weapon. If the peace officer finds such a weapon . . . he may . . . arrest such person.

To whatever extent § 29-829 arguably allows for extraterritorial stops, it only allows arrests for possession of dangerous weapons and is thus inapplicable to the facts of this case. The defendant does not claim error with respect to the initial investigative stop.

The State also relies upon *State v. Green*, 236 Neb. 33, 41, 458 N.W.2d 472, 477 (1990), in which this court in dicta remarked that a jury instruction which stated, " 'A city police officer has the authority to stop and arrest a person outside the city limits if a misdemeanor offense was committed in his presence within the city limits,' " correctly stated the law. This case is distinguishable because the defendant in *Green, supra*, conceded the instruction was a correct statement of the law, and no authority was given for its proposition. As previously stated in this action, fresh pursuit in Nebraska is not applicable to misdemeanors. To the extent that *State v. Green, supra*, implies

that fresh pursuit outside the officer's geographical jurisdiction is applicable to misdemeanor suspects, it is overruled.

In *State v. O'Kelly*, 175 Neb. 798, 124 N.W.2d 211 (1963), *cert. denied* 376 U.S. 956, 84 S. Ct. 978, 11 L. Ed. 2d 975 (1964), this court recognized that evidence obtained as the fruit of an illegal search or seizure, in violation of the fourth amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, is inadmissible in a state prosecution and must be excluded. See, also, *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). After concluding that, as a matter of law, Officer Brandt was without statutory or common-law authority to make the questioned arrest, we hold that the arrest was constitutionally illegal and that the trial court was clearly wrong in not suppressing all evidence obtained subsequent to such arrest.

Although the illegality of the arrest in question gives rise to collateral rights and remedies such as the exclusionary rule recognized in *O'Kelly, supra*, it ordinarily is not a defense to the crime for which the arrest is made. See *State v. Knudsen*, 201 Neb. 584, 270 N.W.2d 926 (1978). See, also, *State v. Smith*, 207 Neb. 263, 298 N.W.2d 162 (1980) (illegality of arrest does not deprive State of opportunity to prove guilt through the introduction of untainted evidence). Here, the validity of the arrest is of no consequence so far as the prosecution of the offense is concerned. See, e.g., *State v. Green*, 238 Neb. 328, 342, 470 N.W.2d 736, 748 (1991):

> It is not necessary for a conviction for driving under the influence of alcoholic liquor that a sample of blood, breath, or urine show a certain concentration of alcohol in a defendant's blood, breath, or urine, as those are alternate offenses under § 39-669.07. [Citations omitted.] "Either a law enforcement officer's observations of a defendant's intoxicated behavior or the defendant's poor performance on field sobriety tests constitutes sufficient evidence to sustain a conviction of driving while under the influence of alcoholic beverages. . . ."

For purposes of remand we note that the arrest did not occur until after Tingle failed the field sobriety tests. There is evidence in the record sufficient to support the conclusion that the police

officer did not intend to arrest Tingle until after she failed the sobriety tests. See *State v. Prahin*, 235 Neb. 409, 413, 455 N.W.2d 554, 558 (1990) ("person is seized within the meaning of the fourth amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave").

Based on the foregoing analysis this court concludes that the trial court was clearly wrong in finding that the police officer had authority to arrest the defendant, and in failing to apply the exclusionary rule to evidence received subsequent to Tingle's arrest.

In the defendant's second assignment of error, she claims that "the trial court erred in allowing into evidence results of the breath test upon defendant over objection of counsel as no expert testimony was given to show the correlation between a breath test result at 3:06 p.m. and what the defendant may have had in her breath at the time she was driving 40 minutes earlier." This court need not address the merits of this assignment of error because of the conclusion regarding the first assignment of error that such breath test result is inadmissible.

In her third and final assignment of error, the defendant claims that the trial court erred in failing to grant defendant's motion to dismiss at the end of the State's evidence. The act of a defendant in adducing evidence after the defendant's motion to dismiss is overruled at the close of the State's evidence operates as a waiver of any error in the trial court's overruling of the motion. *State v. Coburn*, 218 Neb. 144, 352 N.W.2d 605 (1984). See, also, *State v. Hellbusch*, 213 Neb. 894, 331 N.W.2d 815 (1983). Since the defendant adduced evidence after her motion was overruled and failed to renew the motion at the end of the defendant's evidence, the assigned error is meritless.

Since there is merit in the defendant's first assignment of error, we reverse, and remand this cause for a new trial not inconsistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., dissenting.

I dissent from that part of the majority opinion holding that Neb. Rev. Stat. § 17-118 (Cum. Supp. 1990) does not empower police officers employed by cities of the second class to stop and

arrest suspected misdemeanants outside the city limits but within the county.

The jurisdiction of Nebraska police officers employed by cities of the second class to arrest criminal suspects is set out in § 17-118:

> The police officers of the city shall have the power to arrest all offenders against the laws of the state or of the city, by day or by night, *in the same manner as the sheriff* and to keep such offenders in the city prison or other place to prevent their escape, until trial can be had before the proper officer.

(Emphasis supplied.) Pursuant to Neb. Rev. Stat. § 23-1710 (Reissue 1987), it is the duty of the county sheriff "to preserve the peace *in his county*, to ferret out crime, to apprehend and arrest all criminals, and insofar as it is within his power, to secure evidence of all crimes committed *in his county*, and present the same to the county attorney and the grand jury . . . ." (Emphasis supplied.) Neb. Rev. Stat. § 29-404.02(2) (Reissue 1989) provides that a peace officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed a misdemeanor,

> and the officer has reasonable cause to believe that such person either (a) will not be apprehended unless immediately arrested, (b) may cause injury to himself or herself or others or damage to property unless immediately arrested, (c) may destroy or conceal evidence of the commission of such misdemeanor, or (d) has committed a misdemeanor in the presence of the officer.

Neb. Rev. Stat. § 49-801(15) (Reissue 1988) provides that city police officers are "peace officers."

The majority's position is in conflict with this court's decision in *State v. Carpenter*, 181 Neb. 639, 150 N.W.2d 129 (1967), *cert. denied* 392 U.S. 944, 88 S. Ct. 2288, 20 L. Ed. 2d 1406 (1968), that a city police officer had the authority to stop a suspected burglar "just across and outside the city limits" of Blair, Nebraska, pursuant to § 17-118. Significantly, the *Carpenter* court did not discuss the issue of the officer's geographical jurisdiction to detain a suspected felon in conjunction with "fresh pursuit," but based its decision on the

provisions of § 17-118. See, also, *Henning v. City of Hebron*, 186 Neb. 381, 183 N.W.2d 756 (1971), a workers' compensation case, holding that under § 17-118, a police officer of a city of the second class has the same powers and duties as a sheriff or constable and has the duty to apprehend and arrest felons and disturbers of the peace and to keep and preserve the peace within the whole area of his county.

The argument presented by the defendant in this case was similar to that considered and rejected in *Angel v. State*, 740 S.W.2d 727 (Tex. Crim. App. 1987). In *Angel v. State*, the defendant was arrested outside the city limits of Tomball, Harris County, Texas, by a Tomball city police officer after two officers saw him driving a piece of heavy road-paving equipment in the dark, without lights, on a public road. The officers were on routine patrol along the eastern edge of Tomball and were patrolling outside the city limits, but inside Harris County, when they stopped Angel. They noticed that the tractor Angel was driving appeared to have been "hot-wired," determined that there were two warrants issued against Angel in another county for speeding and failure to appear, and arrested Angel on the outstanding warrants and for investigation of possible theft. Angel was subsequently convicted of stealing the road-paving equipment.

Before trial, Angel moved to suppress all evidence seized as a result of his detention, arguing, in part, that the Tomball police officers acted outside their territorial jurisdiction by arresting him outside the Tomball city limits. The applicable Texas statutes provided that " '[a]ny peace officer is authorized to arrest without warrant any person found committing a violation of any provision of [the Uniform Act Regulating Traffic on Highways],' " and that " '[a] peace officer may arrest an offender without a warrant for *any offense* committed in his presence or within his view.' " (Emphasis in original.) 740 S.W.2d at 731. City police officers were "peace officers" under Texas law. *Id*. The Texas court found that it was against the law to drive road-paving equipment at night without headlights, that the Tomball police officers had probable cause to believe that a traffic offense had occurred within their view, and that the officers were authorized by statute to arrest Angel without a

warrant.

Regarding the issue of geographical jurisdiction, the Texas court observed that "statutes which confer upon a peace officer the authority to act may not necessarily define the geographic scope of that authority," *id.* at 732, and held that the legislative expression of a peace officer's jurisdiction must be found in some other statute or be controlled by common law. In this regard, Tex. Rev. Civ. Stat. Ann. art. 998 provided:

> "The city or town council in any city or town in this State . . . may, by ordinance, provide for the appointment, term of office and qualifications of such police officers as may be deemed necessary. . . . *Such officers shall have like powers, rights, authority and jurisdiction as are by said title vested in city marshals.* Such police officers may serve all process issuing out of a corporation court anywhere in the county in which the city, town or village is situated. . . ."

(Emphasis in original.) 740 S.W.2d at 732 n.13. Tex. Rev. Civ. Stat. Ann. art. 999 provided that " '[i]n the prevention and suppression of crime and arrest of offenders, [the city marshal] shall have, possess and execute like power, authority, and jurisdiction as the sheriff.' " (Emphasis omitted.) 740 S.W.2d at 733 n.13. Finally, Tex. Crim. Proc. Code Ann. art. 2.17 provided that " '[e]ach sheriff shall be a conservator of the peace *in his county* . . . .' " (Emphasis in original.) 740 S.W.2d at 733.

A divided court held that the term "jurisdiction" in the context of articles 998 and 999 referred to the geographic scope of a peace officer's power, rights, and authority, and that those statutes granted city marshals and city police officers countywide jurisdiction to arrest offenders.

We have held that the Legislature is presumed to have intended every statutory provision to have a meaning and that the Supreme Court will give effect, if possible, to every word, clause, and sentence thereof. See *Sorensen v. Meyer*, 220 Neb. 457, 370 N.W.2d 173 (1985). See, also, *Canas v. Maryland Cas. Co.*, 236 Neb. 164, 459 N.W.2d 533 (1990). The majority's construction of § 17-118 fails to give reasonable effect to the

statute in its entirety and is merely repetitive of § 29-404.02, pursuant to which city police officers are specifically authorized to arrest suspected misdemeanants without a warrant under certain circumstances.

I would hold that the clause "in the same manner as the sheriff" found in § 17-118 gives a city police officer the same countywide jurisdiction as a sheriff to stop and arrest persons within the county and that the trial court did not err in failing to suppress evidence obtained after the defendant was arrested.

HASTINGS, C.J., and GRANT, J., join in this dissent.