STATE OF NEBRASKA, APPELLEE, V. PATRICK J. GREEN, APPELLANT.

471 N.W.2d 413

Filed June 28, 1991.    No. 90-455.

James C. Stecker for appellant.

Robert M. Spire, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Patrick J. Green appeals his Platte County Court conviction for possession of marijuana and sentence imposed therefor. We affirm.

As explained in *State v. Green, ante* p. 475, 471 N.W.2d 402 (1991) *(Green II)*, this same defendant was involved in a trio of appeals arising from separate events occurring in Platte County over the course of several days. See, also, *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991) *(Green I)*. The same county judge presided over each of Green's jury trials.

In this marijuana conviction appeal, Green claims that the trial court erred in (1) finding that he voluntarily, knowingly, and intelligently waived his right to counsel; (2) failing to appoint standby counsel; (3) striking a witness' testimony; (4) receiving certain exhibits in evidence; (5) refusing to give his proposed instruction on jury nullification; (6) finding that the evidence was sufficient to convict him; and (7) imposing an excessive sentence.

On the evening of March 12, 1989, police officers Todd D. Thalken and Charles D. Case, Jr., were dispatched to a

Columbus, Nebraska, residence to investigate a domestic disturbance. The house had two apartments with separate doorways located on the front porch. The apartment on the main floor was rented to Penny Grape. Glen Grape leased the upstairs apartment. Rosemary and Warren Hellbusch resided with Glen Grape. Rosemary Hellbusch and Glen Grape informed Thalken that Green had been in their apartment and had refused to leave when requested. Grape appeared frightened and expressed his fear that Green might attack him.

Thalken went downstairs to speak with Green to "get his side of the story." At that point, Green was standing on the porch between the two doors. Green stated that he lived in the house. He was very argumentative and aggressive and ordered the policemen to leave. Thalken returned upstairs to speak with Glen Grape and Rosemary Hellbusch and to obtain a written statement of the events. Officer Alan C. Wilkins was also dispatched to the scene on the evening in question and, upon arrival, went to the upstairs apartment. While Thalken was obtaining statements from Grape and Hellbusch, Thalken observed Green standing part way inside the door of Glen Grape's apartment, and Wilkins heard Green yell that the disturbance was downstairs and that he was the culprit. Grape again communicated to the officers his fear of Green.

Case and Wilkins returned downstairs followed by Thalken, who informed Green that he was under arrest for trespassing. Green ran into the downstairs apartment and, along with Penny Grape, held a storm door shut in an attempt to prevent the police from entering. The police were able to resist Grape's and Green's efforts and entered the apartment in order to apprehend Green for trespassing in the upstairs apartment. Case, Wilkins, and Thalken chased Green through a living room and into a kitchen, where he was finally subdued and arrested. Case observed a marijuana pipe and a roach clip on a kitchen counter and informed Thalken and Wilkins of his observation. There was partially smoked marijuana inside the pipe. Green was escorted by Thalken to his police cruiser and taken to the police station.

In the early morning hours of the following day, a search warrant for the Grape-Green apartment was obtained.

Investigator Timothy D. Kayl of the Columbus Police Department was assigned to assist in a search of the premises. He was accompanied to the apartment by Thalken, Wilkins, and Officer Badura. Five members of the police department were present during the search: Thalken, Case, Wilkins, Kayl, and Badura. With the exception of Badura, all the officers testified at trial.

During execution of the warrant, Kayl found a bag of marijuana in a dresser drawer in a bedroom. Motor vehicle titles bearing Green's name and/or signature, as well as female undergarments, were discovered in that drawer. The remaining dresser drawers contained both men's and women's clothing. Mostly adult male and female clothes were found in the bedroom in which the marijuana was discovered. Another dresser in the bedroom contained books, papers, and articles of clothing. The record is silent as to whether male or female clothing was in the second dresser. Also in the bedroom was a twin-sized bed.

Green returned to the apartment and was present during at least part of the search. While the premises were being searched, Green told Wilkins that police officers had found "my ounce and a half" and that they would attempt to prosecute the defendant for delivering the substance. Case and Kayl corroborated Wilkins' testimony on that point. Thalken corroborated Wilkins' testimony and also testified that Green identified his "ounce and a half" as his "stash of pot."

In a cupboard in a living room, Thalken and Kayl discovered a tray with seeds and organic material that appeared to be marijuana, a metal scale, several brass fittings, and a wood pipe with burnt material that smelled like marijuana.

In the bedroom where marijuana was found, Case recovered an application and order to postpone the payment of a fine and costs from the Platte County Court addressed to Green at 2010 11th Street, the address of the downstairs apartment. The application and order was found in a cardboard box at the foot of the dresser in which marijuana was discovered. Case testified that on an earlier occasion when he had responded to a dispute at 2010 11th Street, Green informed him that he lived at that address.

On March 24, 1989, a one-count criminal complaint was filed in the county court for Platte County charging Green, in essence, with possessing more than 1 ounce but not more than 1 pound of marijuana. Green was arraigned on March 28, 1989. At a hearing on April 4, 1989, the court entered a plea of not guilty in Green's behalf. Green requested a jury trial, during which he represented himself. The jury found the defendant guilty of the crime charged. The defendant was sentenced to a term of imprisonment of 7 days in jail, to be served concurrently with any other sentence imposed.

The sentencing order was entered on July 27, 1989, and Green timely appealed to the district court. On May 1, 1990, the district court affirmed the county court's judgment. A timely notice of appeal to this court was filed in the district court on May 4, 1990. An attorney represented Green in both his appeal to the district court and to this court.

## I. WAIVER OF RIGHT TO COUNSEL

At his March 28, 1989, arraignment, Green was advised of certain constitutional and statutory rights. This advisement included Green's right to have an attorney at all critical stages of the proceedings and the right to court-appointed counsel at public expense. The court explained to Green the nature of the charge and the possibility of a jail sentence upon conviction of that charge. When the court asked the defendant if he wanted an attorney to represent him, Green stated that he would not know until after he had read the police report. The court continued the matter for 1 week, until April 4, so that Green could review the police report and make his decision regarding counsel. Green was further informed that if he desired counsel, he should retain one if he was financially able, or if he was financially unable to retain counsel, he should promptly make application to the court for appointment of counsel. The court made it abundantly clear that Green's decision concerning counsel was to be made before his next court appearance, on April 4. Green stated that he understood.

Green appeared without counsel on April 4, 1989, and a plea of not guilty was entered by the court in Green's behalf. It was at that time the defendant requested a jury trial.

The defendant next appeared pro se at a pretrial conference held on May 10, 1989, and moved to have the complaint dismissed on the ground that the search was illegally conducted and that there was no probable cause for the issuance of the search warrant. Green never requested a hearing on the matter. He expressly stated that he was not moving to suppress any evidence. The defendant claimed that in this case four warrants were issued and that two of them were forged by police. Green said he wanted to present that evidence to the jury. Thereafter, when Green did not respond when the court asked if there were any motions, the court set a jury trial for June 1, 1989. The court denied Green's motion for a continuance, which the defendant sought on the basis that the Nebraska Civil Liberties Union was investigating his case. Green appeared pro se at his trial which was held on June 1.

As he did in *Green I* and *Green II*, the defendant claims that his waiver of counsel was not voluntarily, knowingly, and intelligently made because the trial court failed to advise him of the dangers of self-representation. Since we disagree with that contention, we need not reach Green's claim that the trial court's failure to so warn constitutes reversible error.

As a threshold matter, assuming that he was indigent, it is clear that Green had a right to court-appointed counsel. If an indigent defendant is to be imprisoned upon conviction, he or she has a right to court-appointed counsel at trial, regardless of whether the offense for which he or she may be imprisoned is classified as petty, misdemeanor, or felony. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). See, also, Neb. Rev. Stat. § 29-3902 (Cum. Supp. 1990) (statutory right to counsel for felony defendants and misdemeanants who may be punished by imprisonment). It is equally true that a criminal defendant may proceed pro se and forgo his or her right to counsel, but the waiver of that right must be made voluntarily, knowingly, and intelligently. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

This court has rejected Green's argument that a defendant must be explicitly warned of the dangers and disadvantages of self-representation before a voluntary, knowing, and intelligent

waiver of counsel can be found. In *Green I*, we held that a trial court should warn a defendant who has the right to counsel of the dangers and disadvantages of self-representation, but that the warning is not required. Instead, a voluntary, knowing, and intelligent waiver of counsel can be found in the absence of a warning if the record viewed as a whole shows such a waiver. *Id*.

At his arraignment, Green was advised of his right to court-appointed counsel. He was again informed at the conclusion of the arraignment that he could retain his own counsel if he could afford one, but that if he did not have sufficient funds to engage private counsel, he should make application to the court for appointed counsel. Once a defendant is informed of the right to retained or appointed counsel, there is no requirement that the court advise the defendant on each subsequent court appearance of that same right. *Green I*. Green was aware that his decision had to be made before he was to enter his plea 1 week later. He thereafter appeared pro se at all his court appearances. It was reasonable for the court to infer that Green read the police reports and concluded that he could adequately defend himself. By conduct, a defendant can voluntarily, knowingly, and intelligently waive his or her right to counsel. *Id*.

Not only did Green appear pro se after being advised to reach a decision concerning his right to counsel and after examining the police reports to determine the strength of the State's case, but, as the presentence report and Green's past appeals to this court demonstrate, he also had a long history of involvement in the judicial system. In *Green I*, we determined that a defendant's familiarity with the criminal justice system strongly weighs in favor of a finding that a waiver of counsel was voluntarily, knowingly, and intelligently made. As noted in *Green II*, the defendant has often elected to waive counsel and proceed pro se. In two of his cases which were appealed to this court, Green represented himself at trial. See, *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990); *State v. Green*, 229 Neb. 493, 427 N.W.2d 304 (1988). Green even represented himself pro se in his 1988 appeal to this court. This court held in Green's 1990 appeal that his waiver of counsel was made voluntarily, understandingly, and intelligently.

In view of the record, we cannot say that the trial court was clearly wrong in finding Green's waiver of counsel to be valid. See *Green I* ("clearly erroneous" standard of review for a determination of whether waiver of counsel was voluntary, knowing, and intelligent).

## II. STANDBY COUNSEL

The defendant argues that the trial court committed reversible error by failing sua sponte to appoint standby counsel to assist him in his defense. The same contention was made in *Green I* and *Green II*.

A trial court may, but is not required to, appoint standby counsel for a defendant proceeding pro se. *Green I*. Since the appointment of standby counsel may interfere with the orderly progression of a case and runs the risk of infringing on a defendant's right to self-representation, we held in *Green I* that the appointment of standby counsel is left to the discretion of the trial court.

In this case, Green never requested standby counsel. See *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990) (a request for standby counsel is an important factor in deciding whether a court should have appointed standby counsel). This court may take judicial notice of Green's hostility toward and mistrust of attorneys in Platte County, as reported in *Green I* and *Green II*, which the defendant had communicated to this same trial judge before the trial was conducted in this case. See *State v. Losieau*, 180 Neb. 671, 144 N.W.2d 406 (1966) (when certain aspects of the controversy have been previously considered and determined, the Supreme Court can take judicial notice of facts recited in one of its earlier opinions concerning the same defendant but involving a different conviction and sentence).

Although Green may have made misjudgments during the course of the trial, appointment of standby counsel in the absence of Green's request to do so, particularly when viewed in light of his obvious antagonism toward members of the local bar, might well have resulted in an infringement on Green's right to self-representation. See *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) (appeal based on infringement of right to self-representation because of

interference of standby counsel with whom defendant was antagonistic). In light of these considerations, the trial court did not abuse its discretion in not appointing standby counsel for Green.

### III. STRIKING GRAPE'S TESTIMONY

The following testimony was elicited from Penny Grape during the State's case in chief. Penny Grape testified that on the night in question, her children and Green were residing with her. Grape further testified that Green shared a bedroom with her and kept his personal effects in that room. Her testimony reflects that Green had full access to the house, including the bedroom in which the marijuana that he was charged with possessing was discovered.

Green also called Penny Grape to testify in his case in chief. At that time, on direct examination, Grape stated that the dresser in which marijuana was found was hers and that Green's dresser was to the left of hers. Penny Grape also testified that it was a strong possibility that one of her and Green's many visitors might have left paraphernalia on the premises.

During the State's cross-examination, Penny Grape testified in substance that the dresser in question was hers and that the only objects which Green kept in her dresser were the car titles which she placed there. When asked if she knew that marijuana was found in the dresser, she invoked her fifth amendment privilege against self-incrimination. She then stated that Green had access to the dresser. Grape denied that any friends or any children whom she babysat went into the bedroom where the marijuana was found. She testified that she did not see a bag of marijuana on the night in question. When the State again asked her if she observed Wilkins remove any marijuana or "green leafy stuff," Penny Grape invoked her fifth amendment privilege. She invoked the privilege for a third time after the State questioned her concerning paraphernalia in the residence. The court advised the jury to "disregard any testimony of this witness since she has invoked her privilege against self-incrimination."

Green argues that Penny Grape should not have been permitted to assert her fifth amendment privilege because any

answer she may have given would not have incriminated her or had already been given and that she waived the privilege by earlier providing incriminating testimony. The defendant contends that the court's action in striking the testimony prejudicially deprived him of the right to present his defense.

"[A]n error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt. [Citations omitted.]" *State v. Bradley*, 236 Neb. 371, 396, 461 N.W.2d 524, 542 (1990). "When there is some incorrect conduct by a trial court which, on review of the record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant, the error is harmless. [Citation omitted.]" *State v. Plant*, 236 Neb. 317, 338, 461 N.W.2d 253, 269 (1990).

As Green correctly recognizes, the only testimony of Penny Grape's that could have benefited him was her statements that a visitor may have left the paraphernalia in the apartment, that the dresser in question was hers, that Green had a separate dresser, and that she placed his car titles in her dresser. The trial court's statement that the jury must disregard any testimony of Penny Grape was ambiguous. It is not clear whether the trial court was referring to Penny Grape's trial testimony in its entirety or solely her testimony elicited during Green's case in chief. Out of an abundance of caution, we construe the court's statement to mean the former. Thus, in determining whether the county court committed prejudicial error, all of Penny Grape's testimony is ignored. Our assumption that the trial court struck Grape's entire testimony is in no way a reflection on the propriety of that action, nor is it intended as guidance to trial courts when faced with a similar situation. Since Penny Grape's testimony during the State's case in chief could only be interpreted as damaging to Green, this interpretation is advantageous to him.

Even if the jury believed that the dresser was Penny Grape's and that she placed Green's car titles in the drawer in which the marijuana was found, this does not show that Green did not place the marijuana in that drawer. It was uncontroverted at trial that Green resided with Penny Grape in the downstairs

apartment. From the uncontradicted testimony that adult male clothing was present in the dresser and bedroom where the police discovered the marijuana, it is clear that Green shared the bedroom with Penny Grape and would obviously have access to all areas of the room, including dresser drawers. Most importantly, Penny Grape's statements were overwhelmingly outweighed by Wilkins' testimony that Green admitted that the police had found his "ounce and a half," the testimony of three other officers corroborating that admission, and Thalken's testimony of Green's admission that the ounce and a half the defendant was referring to was "pot," i.e., marijuana. See *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989) (if evidence properly admitted at trial overwhelmingly establishes a defendant's guilt, any error in excluding admissible evidence is harmless error beyond a reasonable doubt). Accord, *State v. Jones*, 246 Kan. 214, 787 P.2d 726 (1990); *Young v. State*, 562 So. 2d 370 (Fla. App. 1990). On review of the entire record, we conclude that the striking of Penny Grape's testimony did not materially influence the jury in a verdict adverse to a substantial right of the defendant. Any error in striking any of Grape's testimony was harmless beyond a reasonable doubt.

## IV. RECEIPT OF EXHIBITS IN EVIDENCE

Several exhibits were received in evidence over Green's objections. These exhibits were a picture of the dresser in which the bag of marijuana was found, a picture of the seized marijuana, the pipe and roach clip, the bag of marijuana seized on the night in question, and the application and order sent to Green by the Platte County Court, bearing the Grape-Green apartment address. Green's principal claim is that because an insufficient chain of custody was shown for those exhibits, they were inadmissible.

" 'Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact.' [Citations omitted.]" *State v. Plant, supra* at 338, 461 N.W.2d at 269. In view of the testimony that the marijuana was found in the dresser and the fact that the bag of marijuana was

introduced in evidence, the photographs depicting the dresser and the marijuana were merely cumulative evidence. In the context of the entire record, either photograph had little probative value. Assuming, arguendo, the inadmissibility of those photographs, any error in admitting them was harmless beyond a reasonable doubt. Therefore, our analysis is restricted to the admissibility of the pipe and roach clip, the marijuana, and the application and order.

In addition to attacking the chain of custody of the exhibits at issue, Green also contends that the pipe, roach clip, and application and order were irrelevant. This court has held that a roach clip offered in evidence in prosecution for possession of marijuana is relevant. *State v. Rathburn*, 195 Neb. 485, 239 N.W.2d 253 (1976). The fact that a pipe and roach clip were found in the apartment where Green resided and where the marijuana was found makes it more probable that Green knowingly or intentionally possessed the marijuana than would be the case if the pipe or roach clip were not in evidence. See Neb. Rev. Stat. § 27-401 (Reissue 1989) (relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence). That the pipe and roach clip are relevant to the issue of intent or knowledge forecloses any claim that the evidence was inadmissible as evidence of other crimes. See Neb. Rev. Stat. § 27-404 (Reissue 1989). Turning to the relevance of the application and order addressed to Green bearing the address of the premises where the marijuana was found, the application and order tended to make it more probable that Green resided with Grape and that he constructively possessed the marijuana, as will be more fully discussed in part VI of this opinion. Finally, there is no reason to believe that the probative value of the pipe, roach clip, and application and order was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. See Neb. Rev. Stat. § 27-403 (Reissue 1989).

On the question of whether proper foundation was laid for

admissibility of the exhibits, we are governed by the principle set forth in *State v. Weible*, 211 Neb. 174, 182, 317 N.W.2d 920, 924-25 (1982):

> [A]n exhibit is admissible, so far as identity is concerned, when it has been identified as being the same object about which the testimony was given. It must also be shown to the satisfaction of the trial court that no substantial change has taken place in the exhibit so as to render it misleading. As long as the article can be identified, it is immaterial in how many or in whose hands it has been.

" 'Important in such situations are the nature of the exhibit, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers tampering with the object.' " *State v. Apker*, 204 Neb. 577, 578, 284 N.W.2d 14, 16 (1979). "If substantial identity of one condition with the other condition is reasonably probable, the trial court may receive the exhibit in evidence." *State v. Langer*, 192 Neb. 525, 527, 222 N.W.2d 820, 822 (1974). "Whether sufficient foundation has been laid for the admission of physical evidence must necessarily be determined on a case-by-case basis. [Citation omitted.]" *State v. Kerns*, 201 Neb. 617, 621, 271 N.W.2d 48, 50-51 (1978). "[A] trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for [an] abuse of discretion. [Citations omitted.]" *Weible, supra* at 183, 317 N.W.2d at 925.

Wilkins testified that once the pipe and roach clip were seized by Case, that officer maintained possession of them on the night in question and marked them as evidence and that Wilkins obtained the exhibit from a secured evidence locker on the morning of the trial. At trial, Case identified the pipe and roach clip as those that he found in the kitchen after Green had been arrested. Case testified that the pipe and roach clip were in substantially the same condition as they were the night in question, that he kept the items in his possession until he surrendered them to Captain Scriven, and that Wilkins retrieved them from Scriven.

Kayl testified that he seized the marijuana from the dresser in the Grape-Green apartment. Wilkins testified that while he was still in the apartment, Kayl gave him the marijuana on the

evening in question, that he marked it as evidence, that he placed the marijuana in a police narcotics evidence locker, that no one other than police personnel had access to that locker, and that he brought the marijuana with him to court on the day of trial. Kayl testified that based on his signature on the evidence bag, the exhibit was the same bag of marijuana which he recovered from the apartment.

Case testified that he found the application and order addressed to Green at the searched premises and that he gave it to Wilkins. Wilkins placed the application and order in an evidence bag with the rest of the evidence and marked it, and the application and order was kept in the custody and control of the Columbus Police Department until it was brought to court on the day of Green's trial. It was Case's testimony that the application and order offered in evidence was the application and order which he seized during the search. Wilkins testified that the application and order was in substantially the same condition as it was when it was placed in the evidence bag.

The foundational evidence demonstrates that the pipe and roach clip, the marijuana, and the application and order were the same objects about which testimony was given and that no substantial change had taken place in the exhibits so as to render them misleading. Green's concern that intermeddlers tampered with the exhibits is unfounded. "[P]roof that an exhibit remained in the custody of law enforcement and court officials is sufficient to prove a chain of possession and is sufficient foundation to permit its introduction into evidence. [Citations omitted.]" *State v. Langer, supra* at 527, 222 N.W.2d at 822. As the foregoing shows, the exhibits in this case were in the custody of the Columbus Police Department after they were placed there until introduced at trial. The trial court did not abuse its discretion in admitting the pipe and roach clip, the marijuana, and the application and order.

## V. INSTRUCTION ON JURY NULLIFICATION

Green proposed an instruction which reads in relevant part that "the jury has an 'unreviewable and unreversible power . . . to acquit in disregard of the instructions on the law given by the trial judge . . . .' " Green assigns as error the trial court's refusal

to give that instruction on jury nullification.

Green raised this same argument in *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990). In that case, we held that although a jury may acquit an accused even if its verdict is contrary to the law and the evidence, the defendant is not entitled to have the jury instructed concerning the power of jury nullification. Accord, *United States v. Drefke*, 707 F.2d 978 (8th Cir. 1983), *cert. denied* 464 U.S. 942, 104 S. Ct. 359, 78 L. Ed. 2d 321; *United States v. Moylan*, 417 F.2d 1002 (4th Cir. 1969) (exhaustive discussion of doctrine of jury nullification), *cert. denied* 397 U.S. 910, 90 S. Ct. 908, 25 L. Ed. 2d 91 (1970). This assignment of error is meritless.

## VI. SUFFICIENCY OF THE EVIDENCE

"Any person knowingly or intentionally possessing marijuana weighing more than one ounce but not more than one pound shall be guilty of a Class IIIA misdemeanor." Neb. Rev. Stat. § 28-416(4) (Cum. Supp. 1988). Green's sixth assignment of error claims that the evidence was insufficient to support his conviction under § 28-416(4).

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. *State v. Allison, ante* p. 142, 469 N.W.2d 360 (1991). Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *Id.*

" ' "On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt." ' [Citation omitted.]"

*State v. Cogswell*, 237 Neb. 769, 771, 467 N.W.2d 680, 681-82 (1991).

" ' "A defendant may be convicted by circumstantial evidence which establishes the defendant's guilt beyond a

reasonable doubt. The State is required to establish the defendant's guilt for the crime charged, but is not required to disprove every hypothesis consistent with the defendant's presumed innocence." ' [Citations omitted.]" *State v. Lonnecker*, 237 Neb. 207, 213, 465 N.W.2d 737, 742 (1991).

A defendant possesses a controlled substance when the defendant knows of the nature or character of the substance and its presence and has dominion or control over the substance. [Citations omitted.]

A defendant's control or dominion over premises where a controlled substance is located may establish the defendant's constructive possession of the controlled substance. [Citations omitted.]

*Id.*

Although chemical analysis was not used to identify as marijuana the substance seized from the dresser, the evidence was sufficient for the jury to find beyond a reasonable doubt that the substance was marijuana. As this court explained in *State v. Nash*, 233 Neb. 318, 444 N.W.2d 914 (1989): "The existence of . . . narcotics may be proved by circumstantial evidence. There need be no sample placed before the jury, nor need there be testimony by qualified chemists as long as the evidence is sufficient to support an inference that the material in question was narcotics." (Syllabus of the court.) Investigator Kayl was the witness through whom the marijuana was offered in evidence. Kayl had received Drug Enforcement Agency training in drug investigation, identification, and detection. Kayl testified that he had seen and smelled burnt and unburnt marijuana. He reported that unsmoked marijuana has a distinctive smell. Kayl further testified that in every one of the 30 to 35 cases in which he had identified a substance to be marijuana, chemical analysis confirmed his identification. To Kayl's testimony must be added Green's admission that the substance was marijuana. The evidence was sufficient for the jury to determine beyond a reasonable doubt that the substance seized from the dresser in the Grape-Green apartment was marijuana.

There was evidence from which the jury could infer that Green resided in the apartment in question and that Green

shared the bedroom in which the marijuana was found. Furthermore, there was testimony that Green admitted that the 1½ ounces of marijuana were his. The evidence was sufficient for the jury to find beyond a reasonable doubt that Green knew of the nature or character of the marijuana and its presence and that he had dominion or control over it.

The principal thrust of the instant assignment of error is that the evidence was insufficient to show that the marijuana weighed over 1 ounce but not in excess of 1 pound. Kayl testified that he weighed the seized marijuana on the police department's triple-beam scale. He performed testing on the scale to ensure its accuracy. The "zip-lock" plastic bag in which the marijuana was contained, together with the marijuana, weighed approximately 50½ grams, which is approximately 1½ ounces. Kayl testified that the bag of marijuana found in the dresser contained a normal amount of stems and seeds for a cleaned bag of marijuana. He further testified that based on his training and experience and the reading obtained when he weighed the marijuana in question, the confiscated substance exceeded an ounce in weight.

Green contends that the evidence was insufficient to show that the marijuana weighed over an ounce. In support, he points to the fact that Kayl never removed the marijuana from its baggie container. Relying on Neb. Rev. Stat. § 28-401(14) (Reissue 1989), which excludes from the definition of marijuana mature stalks and sterilized seeds incapable of germination, Green further asserts that Kayl's testimony shows that seeds and stems were in the marijuana. The significance of Green's argument lies in the legislative decision to impose a lesser penalty for possession of marijuana weighing an ounce or less. See § 28-416(6).

The definition of marijuana set forth in § 28-401(14) includes all parts of the plant, including the seeds, but excludes mature stalks and sterilized seeds. There is nothing in Kayl's testimony to indicate that the baggie of marijuana contained mature stalks or sterilized seeds. Kayl testified that the marijuana contained a normal amount of stems and seeds for a *cleaned* bag of marijuana. He further testified that based on his training and experience and the reading he obtained from the

scale when he weighed the marijuana, the marijuana seized from the Grape-Green apartment was in excess of an ounce in weight. Kayl's testimony is corroborated by Green's admission that the police had found his "ounce and a half stash of pot." The evidence was sufficient for the jury to conclude beyond a reasonable doubt that Green knowingly or intentionally possessed marijuana weighing more than 1 ounce but not more than 1 pound. This assignment of error is without merit.

## VII. EXCESSIVENESS OF THE SENTENCE

Possession of marijuana of over 1 ounce but not more than 1 pound is a Class IIIA misdemeanor. § 28-416(4). Having been convicted under that statute, Green was subject to a term of 7 days in jail, a $500 fine, or both. See Neb. Rev. Stat. § 28-106 (Reissue 1989). The defendant was sentenced to 7 days in jail. In his final assignment of error, Green contends that the county court abused its discretion in not giving him an opportunity to rehabilitate himself on probation.

"[T]he denial of probation and the imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal unless there has been an abuse of discretion. [Citations omitted.]" *State v. Dean*, 237 Neb. 65, 77, 464 N.W.2d 782, 791 (1991). "In considering probation in lieu of a sentence the court should not withhold imprisonment when a lesser sentence would depreciate the seriousness of the offender's crime or promote disrespect for the law." *Id.* (citing Neb. Rev. Stat. § 29-2260 (Reissue 1989)).

> " 'In considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes observations of the sentencing judge as to the demeanor, attitude, and all facts and circumstances surrounding the life of the defendant. . . .' " [Citations omitted.]

*State v. Rodgers*, 237 Neb. 506, 511, 466 N.W.2d 537, 540 (1991).

Green has a lengthy history of prior offenses, including a previous conviction of possession of a controlled substance. He admitted to his probation officer that he was a regular user of

marijuana and had last consumed marijuana on the evening prior to his interview with that officer. In view of his past record and continued use of marijuana, it is obvious that Green has no desire to conform his conduct to the law. Sentencing Green to probation would have depreciated the seriousness of his crime and promoted disrespect for the law. The trial court did not abuse its discretion in imposing Green's sentence.

The judgment of the district court affirming the county court's judgment is affirmed.

AFFIRMED.