STATE OF NEBRASKA, APPELLEE, V.
HENRY DELGADO, APPELLANT.
690 N.W.2d 787

Filed January 14, 2005.    No. S-03-1401.

Bernard J. Straetker, Scotts Bluff County Public Defender, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## I. NATURE OF CASE

Following a jury trial, Henry Delgado, appearing pro se, was found guilty of kidnapping, first degree sexual assault on a child, and felon in possession of a firearm. Delgado was sentenced to life imprisonment without parole for kidnapping, 40 to 50 years' imprisonment for first degree sexual assault on a child, and 10 to 20 years' imprisonment for felon in possession of a firearm. All sentences were ordered to run consecutively, and Delgado was given credit of 235 days for time served with respect to his felon in possession of a firearm conviction. Delgado, through counsel, appealed his convictions. We affirm.

## II. BACKGROUND

In the early hours of April 19, 2003, an AMBER Alert, which is a child abduction alert system, was issued for 8-year-old K.B., who had last been seen getting into a white car with Delgado on the afternoon of April 18. On April 18, K.B. and her mother attended a gathering at K.B.'s grandmother's apartment. Also present at the gathering was Delgado. K.B.'s mother testified that at

approximately 4 p.m., she left the apartment to obtain additional items for dinner. Upon returning, she discovered that both Delgado and K.B. were missing. K.B.'s mother was informed that K.B. had left the premises with Delgado, although K.B. did not have permission to do so.

There was evidence that K.B. left voluntarily with Delgado after he offered to take her out to dinner. However, instead of taking K.B. out to eat, Delgado went to a liquor store where he purchased liquor for himself and candy for K.B. Delgado then drove to Wildcat Hills, a wooded recreational area. By the time they arrived at Wildcat Hills, it was beginning to get dark. K.B. testified that after parking near a picnic area surrounded by trees, Delgado told K.B. it was time "to party," and he and K.B. moved to the back seat of his vehicle where Delgado consumed some of the alcohol. K.B., upon Delgado's request, tasted some of the liquor. K.B. also testified that later on, Delgado lit a lighter under a piece of tinfoil and sucked up a white substance through a rolled-up $20 bill.

K.B. testified that at some point in the evening, Delgado suggested that he and K.B. remove their clothing. At that time, K.B. removed all her clothing except her underwear, and Delgado removed all his clothing including his underwear. K.B. claimed Delgado then told her to lie down and asked if she wanted to be his girl friend. K.B. answered affirmatively, and Delgado kissed her. Despite K.B.'s attempts to keep her underwear on, she claimed Delgado "pushed them off" and attempted to penetrate her vaginally. K.B. testified that she resisted Delgado's attempts by tightening her stomach muscles and crossing her legs. K.B. further testified that Delgado attempted to penetrate her anally, which she also resisted.

According to K.B., when Delgado had difficulty fully penetrating her with his penis, he yelled at her and hit her on the face. K.B. testified that Delgado also put his fingers in K.B.'s vagina in a further attempt to penetrate her vaginally. K.B. further testified that during the assault, Delgado advised her that if she would let him penetrate her with his penis, they could return home. According to K.B., Delgado also retrieved a gun from the trunk of the vehicle and threatened to take her out in the woods and shoot her if she did not quit crying and let him penetrate her.

K.B. stated that when it began to get light outside, K.B. was allowed to put her clothes back on. Delgado and she then cleaned out the vehicle, and she went to sleep in the back seat of the car. K.B. testified that some time later, she was awakened by Delgado, who directed her to put her shoes and jacket on, and that they then ran from the car. Eventually, Delgado picked up K.B. and carried her halfway down a hill where he placed her under a tree and told her to stay where she was while he tried to start the car. K.B. remained in the trees as instructed. While she waited for Delgado to return, K.B. heard a helicopter, saw people moving around on the hill to her right, and heard someone calling her name. After K.B. began to cry, she was found by a police officer and placed in a helicopter that transported her to a hospital for an examination.

The record reflects that when law enforcement officers arrived at Wildcat Hills, Delgado was not wearing any underwear, shorts, or pants. Instead, he was using a T-shirt as a makeshift covering —he had his legs through each of the T-shirt armholes and had secured the shirt with a belt. The record also shows that following a search of Delgado's vehicle and the surrounding area, law enforcement officers located a pair of men's underwear, a .30/30 Winchester rifle, rifle shells, aluminum foil with burn marks, a pair of white children's underwear, a bottle of blue-colored "Pucker," and a bottle of red-colored "Watermelon Pucker." The liquor and men's underwear were located in a trash can in the shelter area near Delgado's vehicle. Delgado was arrested and later charged with kidnapping, first degree sexual assault on a child, felon in possession of a firearm, and habitual criminal.

On October 1, 2003, Delgado filed a motion to discharge counsel and gave notice of his intent to proceed pro se. The motion was set for hearing, at which time the trial court spoke with Delgado regarding self-representation. The judge's questioning revealed that Delgado felt that he had a fairly good understanding of the State's evidence, that he knew what defenses he might have and would be able to present at trial, that he felt he could adequately cross-examine experts called by the State, that he had represented himself in federal court in habeas corpus proceedings, that he had sat through an entire jury trial where he was the defendant, and

that he had reviewed the Nebraska rules of evidence and felt that he had enough experience to make objections on the proper grounds as needed. At that hearing, the trial court determined that Delgado had waived his right to counsel voluntarily, intelligently, and knowingly and appointed Delgado's trial counsel to serve as standby counsel to assist Delgado if he so wished. Delgado was advised by the court that his trial would commence on November 3, 2003.

On October 24, 2003, Delgado wrote a letter to the court requesting medical records of K.B. under the rape shield statute to establish that she had suffered injuries from being sexually abused by individuals other than Delgado. The trial court ruled that other than questioning the examining physician and other medical personnel regarding their opinions or conclusions as to the age of K.B.'s injuries, no other evidence would be allowed regarding K.B.'s prior sexual history.

At Delgado's trial, he appeared pro se and continued to represent himself throughout the proceeding. During his cross-examination of K.B.'s mother, Delgado attempted to question her regarding her deposition testimony which indicated that K.B. had previously made a false accusation of sexual assault. However, following the State's objection, the trial court excluded such evidence as inadmissible hearsay. Delgado does not appeal the court's hearsay ruling.

Testimony was elicited from Dr. Richard Rojas, the physician who examined K.B. following her abduction. Rojas testified that injuries to K.B.'s vaginal area and anal area were consistent with trauma but were not consistent with vaginal penetration. However, he did feel that there had been penetration of her labia. As to whether K.B. had been anally penetrated, Rojas testified that there could possibly have been some penetration due to the gaping nature of the opening. He indicated the gaping opening could also have been attributable to a need to have a bowel movement. Rojas also testified that a notch on K.B.'s hymen appeared to be an old injury.

At the conclusion of the trial, the jury returned a verdict finding Delgado guilty of all charges. Following his conviction, counsel was appointed to represent Delgado during all further proceedings.

## III. ASSIGNMENTS OF ERROR

Delgado assigns, restated, that (1) the trial court erred by allowing Delgado to waive his right to counsel; (2) the trial court erred by denying Delgado the right to present evidence of K.B.'s prior sexual abuse; (3) the evidence was insufficient to convict Delgado of kidnapping, first degree sexual assault, and felon in possession of a firearm; and (4) the trial court erred by sentencing Delgado to life imprisonment.

## IV. STANDARD OF REVIEW

■ In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Hudson*, 268 Neb. 151, 680 N.W.2d 603 (2004); *State v. Keup*, 265 Neb. 96, 655 N.W.2d 25 (2003).

■ In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a clearly erroneous standard of review. *State v. Green*, 238 Neb. 492, 471 N.W.2d 413 (1991).

## V. ANALYSIS

### 1. Delgado's Request to Proceed Pro Se During Trial

Delgado argues in his first assignment of error that the trial court erred in allowing him to proceed with his trial pro se. Delgado claims that the trial court did not offer enough warnings regarding the consequences of his decision to proceed pro se and did not sufficiently ensure that he understood the consequences of his decision. Delgado acknowledges that specific, verbatim warnings of the dangers and disadvantages of self-representation are not required, but claims that the advice and warnings offered by the trial court were woefully insufficient to render Delgado's waiver of counsel voluntary, knowing, and intelligent.

■ Under U.S. Const. amend. VI and Neb. Const. art. I, § 11, a criminal defendant has the right to waive the assistance of counsel and conduct his or her own defense. *State v. Sack*, 239

Neb. 690, 477 N.W.2d 921 (1991). In order to waive the constitutional right to counsel, the waiver must be made knowingly, voluntarily, and intelligently. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001). However, this court has held, as have other courts, that *Faretta* does not require that formal warnings be given by the trial court to establish a knowing, voluntary, and intelligent waiver of the right to counsel. See, *Ferguson v. Bruton*, 217 F.3d 983 (8th Cir. 2000) (stating that specific warning of dangers and disadvantages of self-representation is not required in every case if record shows that defendant had such knowledge from other sources); *State v. Dunster, supra.*

Delgado asserts that in determining whether his waiver was given knowingly and intelligently, we should apply the four-part "[f]ederal test" used by the Seventh Circuit Court of Appeals in *U.S. v. Egwaoje*, 335 F.3d 579 (7th Cir. 2003). Brief for appellant at 18. However, the court stated that the four-part inquiry is not a formalistic, mechanical approach. *U.S. v. Egwaoje, supra.* Rather, the court's ultimate inquiry is whether the record supports a knowing and intelligent waiver, regardless of the consideration of the four factors. *Id.* If it does, the trial court's decision will be upheld. *Id.* We also have rejected the claim that a formalistic litany is required to show such a waiver was knowingly and intelligently made. *State v. Green, supra.* Thus, we reject Delgado's argument that we adhere to a strict four-part analysis and instead review the record to determine whether, under the totality of the circumstances, Delgado was sufficiently aware of his right to counsel and the possible consequences of his decision to forgo the aid of counsel. See *State v. Dunster, supra.*

In determining whether Delgado's waiver of counsel was knowingly and intelligently made, the cases of *State v. Green*, 238 Neb. 492, 471 N.W.2d 413 (1991), and *State v. Dunster, supra*, are instructive. In *Green*, we found that the defendant had made a knowing and intelligent waiver of his right to counsel. In reaching that conclusion, we noted that a knowing and intelligent waiver can be inferred from a defendant's conduct and that such a waiver could be made despite the trial court's failure to advise the defendant of the dangers and disadvantages of self-representation. We also emphasized that a defendant's decision

to represent himself need not be prudent, just knowing and intelligent. In *Green*, we also took note of the defendant's prior experience with the judicial system, in particular his prior self-representation during a criminal trial.

Similarly, in *State v. Dunster, supra*, we found that the defendant had made a knowing and intelligent waiver of his right to counsel. In that case, the defendant was aware of his right to legal representation, had discussed self-representation with two attorneys, was advised of the complexities of evidentiary objections and the preservation of those objections, and was informed he would be held to the same standard as a defendant represented by counsel. In addition, the defendant was advised by the trial court that it believed the defendant was making a mistake by electing to proceed pro se.

We conclude, upon a review of the record, that Delgado likewise knowingly, intelligently, and voluntarily waived his right to counsel. The record reflects, as recited above, that Delgado was well aware of his right to legal counsel and of the possible sentences he faced for the various charges against him. The record also reflects that Delgado was advised of his rights surrounding his trial and of the complexities of representing himself, including knowledge of the technical Nebraska rules of evidence. Moreover, Delgado was hardly a novice at dealing with the criminal justice system. The trial court appointed Delgado's trial counsel as standby counsel to assist Delgado if he needed help and to resume representation of Delgado if he later chose to relinquish his right to self-representation.

### 2. EVIDENCE OF K.B.'s PRIOR SEXUAL HISTORY

In his second assignment of error, Delgado argues that the trial court committed reversible error when it prohibited him from presenting evidence of K.B.'s alleged prior sexual abuse. By letter, which the court treated as a pretrial motion, Delgado requested permission to present such evidence under the rape shield statute, Neb. Rev. Stat. § 28-321(2) (Reissue 1995). The trial court overruled the motion and limited questions regarding K.B.'s prior sexual abuse to the opinions and conclusions of physicians based upon their examination of K.B. following her April 18 and 19, 2003, assault.

▆ Delgado also attempted to question K.B.'s mother regarding an alleged prior accusation of sexual abuse made by K.B., which Delgado claims was later determined to be unfounded. Delgado did not request permission to admit this evidence by pretrial motion, but, rather, attempted to elicit testimony regarding this prior accusation through Delgado's cross-examination of K.B.'s mother. Delgado, however, was not permitted to conduct this cross-examination because of a hearsay objection. In a closed proceeding after the mother's testimony, the trial court addressed in more detail the admissibility of evidence regarding K.B.'s previous accusation of sexual abuse. At that proceeding, Delgado stated his belief that such evidence was admissible under the Nebraska rules of evidence for impeachment purposes. This was the first time this theory was advanced. The trial court noted that it was treating Delgado's questioning as an offer of proof, which it overruled on the ground that the testimony of K.B.'s mother regarding what she had been told by the police officers who investigated K.B.'s previous allegation of sexual abuse was inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. Neb. Rev. Stat. § 27-801 (Reissue 1995). The questions Delgado sought to ask meet the definition of hearsay and were properly excluded.

Delgado's assignment of error on this subject is without merit.

### 3. SUFFICIENCY OF EVIDENCE

▆ Delgado claims the trial court erred in finding there was sufficient evidence to convict him of kidnapping, first degree sexual assault on a child, and felon in possession of a firearm. On appellate review, a criminal conviction must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Leonor*, 263 Neb. 86, 638 N.W.2d 798 (2002). On a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative value as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *Id.* When considering the sufficiency of the evidence in determining

whether to remand for a new trial or to dismiss, an appellate court must consider all the evidence presented by the State and admitted by the trial court irrespective of the correctness of that admission. *State v. Rathjen*, 266 Neb. 62, 662 N.W.2d 591 (2003).

## (a) Kidnapping

A person commits kidnapping if he or she abducts another or, having abducted another, continues to restrain him or her with intent to terrorize him or her or a third person. Neb. Rev. Stat. § 28-313 (Reissue 1995); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994). "Abduction" is defined as restraining a person with intent to prevent his or her liberation by (1) secreting or holding him or her in a place where he or she is not likely to be found or (2) endangering or threatening to endanger the safety of any human being. Neb. Rev. Stat. § 28-312(2)(a) and (b) (Reissue 1995). "Restrain," in turn, is defined in relevant part as restricting a person's movement in such a manner as to interfere substantially with his or her liberty (1) by means of force, threat, or deception or (2) where the person is under the age of 18, without the consent of the relative or person having lawful custody of him. § 28-312(1)(a) and (b).

The evidence presented at trial, viewed in the light most favorable to the State, reveals that Delgado persuaded 8-year-old K.B. to accompany him by promising to take her out to dinner. Instead, Delgado took her to a liquor store and then drove her to a secluded area where he kept her for the remainder of the night. At no time did Delgado receive permission to have K.B. accompany him. While K.B. was confined in Delgado's vehicle, Delgado sexually and physically assaulted her and threatened to kill her with a gun he brandished in front of her. In the morning, when it became obvious that the police were in the vicinity of Wildcat Hills, Delgado hid K.B. among trees and brush and denied knowledge of her whereabouts when questioned by police.

Viewing the evidence regarding K.B.'s abduction and continued restraint in the light most favorable to the State, we determine it is clear that the evidence was sufficient to support Delgado's conviction of kidnapping.

### (b) Sexual Assault

Delgado argues that the evidence was insufficient to support his conviction of first degree sexual assault. He contends that the possibility that K.B.'s physical injuries were attributable to causes other than sexual penetration or assault by him renders the evidence insufficient to support his conviction. Delgado also suggests that inconsistencies in what K.B. told the doctors and nurses at the hospital following her abduction, K.B.'s taped interview taken a few days after her abduction, and her testimony at trial imply that her accusations were false. Delgado contends, therefore, that there was insufficient evidence on which to convict him of first degree sexual assault.

[12] In order for Delgado to be convicted of first degree sexual assault, it was necessary for the State to prove that Delgado subjected K.B. to sexual penetration when K.B. was less than 16 years old and Delgado was 19 years old or older. Neb. Rev. Stat. § 28-319 (Reissue 1995). "Sexual penetration" is defined in relevant part as "any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes." Neb. Rev. Stat. § 28-318(6) (Reissue 1995).

The record reflects that on April 18 and 19, 2003, Delgado was 39 years old and K.B. was 8 years old. The record further reflects that K.B.'s treating physician, Rojas, opined that K.B. had been penetrated in the labia area into the labia minora and had possibly been penetrated anally. Consistent with Rojas' findings, K.B. testified that while in Delgado's car, he attempted to penetrate her with his penis vaginally and anally and that he successfully penetrated her vaginally by sticking his fingers in her vaginal opening. This evidence is sufficient for the trier of fact to determine that K.B. was penetrated by Delgado, however slightly, and that this penetration was within the meaning of § 28-318(6). Therefore, there was sufficient evidence to support Delgado's conviction of first degree sexual assault.

### (c) Felon in Possession of Firearm

Finally, Delgado argues that there was insufficient evidence to support his felon in possession of a firearm conviction because

there was no documentary evidence adduced at trial that Delgado was a felon. Delgado claims that the only evidence adduced at trial regarding his prior criminal record was the testimony of a police officer who discussed Delgado's prior record as it related to the officer's decision to issue the AMBER Alert.

Contrary to Delgado's assertion on appeal, the record does contain documentary evidence of Delgado's prior felony convictions. The record reflects that on January 7, 1985, Delgado was sentenced in Michigan to 10 to 20 years' imprisonment for breaking and entering and 2 to 5 years' imprisonment for larceny in a building. The record also reflects that a weapon was found in his possession at the time of his arrest for the abduction of K.B. Therefore, Delgado's claim that the evidence was insufficient with respect to his weapons charge is without merit.

### 4. EXCESSIVENESS OF SENTENCE

In his final assignment of error, Delgado claims that the trial court committed reversible error by sentencing him to life imprisonment for kidnapping, as opposed to sentencing him to a term of years. In support of this claim, Delgado relies on § 28-313(3), which permits a trial court to impose a Class II sentence when the court finds that the person kidnapped was voluntarily released or liberated alive by the abductor in a safe place without having suffered serious bodily harm. Delgado also argues in his reply brief that the U.S. Supreme Court's recent decision in *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), restricts the ability of "judicial power to infringe upon the province of the jury." Reply brief for appellant at 3. Delgado claims, therefore, that the jury, and not the trial judge, should have determined whether the mitigating factors of § 28-313(3) had been met. We determine that Delgado's reading of *Blakely* is misguided and that the trial court did not err in sentencing Delgado to life imprisonment for kidnapping.

Section 28-313 provides in pertinent part:

(2) Except as provided in subsection (3) of this section, kidnapping is a Class IA felony.

(3) If the person kidnapped was voluntarily released or liberated alive by the abductor and in a safe place without

having suffered serious bodily injury, prior to trial, kidnapping is a Class II felony.

In *Blakely v. Washington, supra*, the U.S. Supreme Court was applying the rules of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The rule is that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury.

We have, in our prior cases, examined the statute prescribing the penalty for kidnapping in light of *Apprendi*. In *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), the defendant claimed that the jury should have been instructed to determine whether the victim was voluntarily released or liberated and alive by the abductor and in a safe place without having suffered serious bodily injury. We stated that we had rejected such an argument in *State v. Becerra*, 263 Neb. 753, 758-59, 642 N.W.2d 143, 148 (2002), where we stated:

In *Apprendi v. New Jersey, supra*, the U.S. Supreme Court held that other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. The Court stressed that the fact must increase the penalty. The Court made a distinction between facts in aggravation of punishment and facts in mitigation of punishment. The Court stated that when the issue involves mitigating facts under which the defendant can escape the statutory maximum, core concerns involving the jury and burden of proof requirements are absent. See *id*.

*Apprendi* is inapplicable to [the defendant's] case. We have held that § 28-313 creates a single criminal offense and not two separate offenses, even though it is punishable by two different ranges of penalties depending on the treatment accorded to the victim. The factors which determine which of the two penalties is to be imposed are not elements of the offense of kidnapping. The factors are simply mitigating factors which may reduce the sentence of those charged under § 28-313, and their existence or nonexistence should properly be determined by the trial judge. *State v. Hand*, 244

Neb. 437, 507 N.W.2d 285 (1993); *State v. Schneckloth, Koger, and Heathman*, 210 Neb. 144, 313 N.W.2d 438 (1981). Under § 28-313, any factual finding about whether the person kidnapped was voluntarily released affects whether the defendant will receive a lesser penalty instead of an increased penalty. *Apprendi* made clear that it was concerned only with cases involving an increase in penalty beyond the statutory maximum and does not apply to the mitigating factors in § 28-313.

Section 28-313 creates a single criminal offense and not two separate offenses, even though it is punishable by two different ranges of penalties depending on the treatment accorded to the victim. *State v. Mata, supra*; *State v. Becerra, supra*. The factors which determine which of the two penalties is to be imposed are not elements of the offense of kidnapping, but are simply mitigating factors which may reduce the sentence of those charged under this section, and their existence or nonexistence should properly be determined by the trial judge. *Id.*

We conclude, therefore, that Delgado's final assignment of error is without merit.

■ Having established that the trial court had jurisdiction to impose Delgado's kidnapping sentence, we turn to his claim that the mitigating factors of § 28-313(3) had been satisfied. Section 28-313 provides that a defendant will be guilty of a Class II felony, rather than a Class IA felony, if the person kidnapped was voluntarily released or liberated alive by the abductor and in a safe place without having suffered serious bodily injury.

In refusing to find that the mitigating factors of § 28-313(3) had been met, the trial court stated the evidence reflected that K.B. had not been voluntarily released or liberated. The evidence supports the trial court's finding. It is apparent from the record that when Delgado became aware of the presence of law enforcement, he attempted to hide K.B. by placing her under a tree in a ravine where he told her to stay while he tried to start his car. Moreover, when questioned by law enforcement officials regarding K.B.'s whereabouts, Delgado denied having any such knowledge. Delgado's conduct was a far cry from voluntarily releasing and liberating the victim within the meaning of § 28-313. Rescue is not a voluntary release. Moreover, the evidence clearly reflects

that K.B. was both physically and sexually abused during her abduction. Therefore, we find the trial court did not err in determining the kidnapping charge should be classified as a IA felony for the purpose of sentencing.

## VI. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

AFFIRMED.